## Berlant et al. *v.* Lower Merion Township Zoning Hearing Board.

Argued February 11, 1971, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*John F. Christie, III,* with him *Samuel H. High, Jr.,* and *High, Swartz, Roberts & Seidel,* for appellants.

*Robert S. Ryan,* with him *John W. Fischer, Lewis H. Van Dusen, Jr.,* and *Drinker, Biddle & Reath,* for appellee.

*Edward N. Barol,* with him *Jack A. Rounick* and *Moss, Rounick & Hurowitz,* for intervenor.

OPINION BY JUDGE MANDERINO, July 12, 1971:

Beth Am Israel Synagogue (Synagogue) is the owner of four acres of land in Lower Merion Township. These four acres are classified "R-1" under the Lower Merion Township Zoning Ordinance. Under that classi-

fication a religious use of land is permitted when authorized by special exception. The Synagogue applied to the Township Zoning Board of Adjustment for a special exception to build a house of worship on these four acres and for a variance from the parking requirements of the classification. Both of these requests were granted by the Zoning Board. Several neighbors to the proposed site of the new synagogue protested the granting of the special exception. These protestors have never challenged the grant of the variance from the parking requirements, and therefore we do not deal with the question of whether or not such grant constituted an abuse of discretion or error of law by the Board.

On appeal to the Court of Common Pleas of Montgomery County, the decision of the Zoning Board granting a special exception to the Synagogue, was affirmed. The protesting neighbors have now appealed to this court, pursuant to Section 402(4) of the Appellate Court Jurisdiction Act (Act of July 31, 1970, 17 P.S. 211.402(4)).

The protesting neighbors contend that the Synagogue has not met its burden of establishing that the proposed special exception will not be contrary to the public interest. Section 2305(3) of the Zoning Ordinance of Lower Merion Township provides as follows: "In determining whether the allowance of a special exception or variance is contrary to the public interest, the Board shall consider whether the application, if granted, will: a. substantially increase the traffic congestion in the streets; b. increase the danger of fire or panic or otherwise endanger the public safety; c. overcrowd the land or create an undue concentration of population; d. impair an adequate supply of light and air to adjacent property; e. be consistent with the surrounding zoning and uses; f. adversely affect the com-

prehensive plan of the township; g. unduly burden water, sewer, school, park or other public facilities; or h. otherwise adversely affect the public health, safety, morals or general welfare." The protesting neighbors thus maintain that in order to warrant the grant of the special exception, the Synagogue must produce credible evidence to the effect that the proposed building will in no way affect the health, safety, morals and general welfare of the community as defined by the zoning ordinance. This is clearly not the law.

A special exception is not an "exception" to a zoning ordinance. It is a permitted use which an applicant is entitled to have, unless the Board determines, according to the standards in the zoning ordinance, that the use would adversely affect the community. *In re O'Hara's Appeal*, 389 Pa. 35, 131 A. 2d 587 (1957), made it clear that the burden is not upon the applicant for a special exception to establish that the proposed use would not adversely affect the health, safety, and morals of the community. In this case, the Synagogue met its requirements by showing that its application fell within the provision of the ordinance permitting a religous use by special exception and by putting forth a plan showing the proposed use of its land. To require an owner of land, who wishes to use it for a *permitted* use, to do more would be unreasonable. The protestors fear that the erection of a synagogue in their neighborhood would greatly increase traffic congestion and would destroy the character of their neighborhood by increasing the presence of what they refer to as "creeping institutionalism." However, neither of these fears justify the denial of a use permitted by special exception.

The ordinance involved here specifically permits land in the area to be used for "religious" purposes. The use of the land for that purpose would naturally

increase the flow of traffic to a greater extent than if the land were used for a single-family dwelling. The legislative body of Lower Merion Township obviously realized this and, nevertheless, permitted the land to be used for places of worship. Also, the fact that the ordinance permitted religious uses in this neighborhood is evidence of the Township Council's realization that the character of the neighborhood would not remain exclusively as one of single-family residences.

Since there was no evidence compelling a conclusion that the grant of the special exception was contrary to the public interest as defined by the standards listed in the ordinance, we find neither an abuse of discretion nor any error of law in the lower court's decision. The order of the lower court is affirmed.