### Cherbel Realty Corporation *v.* Zoning Hearing Board.

138

Argued November 5, 1971, before President Judge Bowman and Judges Wilkinson, Jr., Mencer and Rogers.

John W. Nilon, Jr., with him Robert E. J. Curran and Kassab, Cherry, Curran & Archbold, for appellant.

A. Leo Sereni, for appellee.

Opinion by Judge Rogers, January 13, 1972:

This is an appeal by a landowner from an order of the Court of Common Pleas of Delaware County sustaining a Zoning Hearing Board's denial of the appellant's application for a special exception.

Appellant Cherbel Realty Corporation applied to the Zoning Hearing Board of Haverford Township for a special exception to establish a car wash cum motor vehicle filling station. The Board denied the application and the court below, without hearing additional evidence, dismissed the appeal.

The court below concluded that the Board had committed an error of law in placing upon the applicant the burden of showing that the proposed use would be consistent with the health, safety and welfare of the community. If the township zoning ordinance did, in

fact, place on the applicant for a special exception the burden of showing no adverse effect on health, safety and general welfare, we would be faced with a troublesome question. Compare *Berlant et al. v. Lower Merion Township Zoning Hearing Board,* 2 Pa. Commonwealth Ct. 583, 279 A. 2d 400 (1971) and *Derr Flooring Company, Inc. v. Whitemarsh Township Zoning Board of Adjustment,* 4 Pa. Commonwealth Ct. 341, 285 A. 2d 538 (1971). However, Paragraph 18 of Haverford Township Zoning Ordinance No. 1326 of December 11, 1967, reads as follows: "On a petition for a Special Exception, the burden of proof shall be upon the applicant to show that the granting of such Special Exception is in harmony with the general purposes and intent of the Haverford Township Zoning Ordinance of 1925." This language is so vague that the lower court was correct in concluding that the applicant's only burden was to prove that its request for special exception conformed to the requirements of the ordinance and that the opposition to the exception must carry the burden of proving that the proposed use would be contrary to the public interest. The court below concluded that this burden had been met and affirmed the Board's denial of the exception.

Appellant proposes to construct an automatic car wash with gasoline pumps on West Eagle Road in the H-Business Zoning District of Haverford Township. A car wash is concededly of the same general character as a motor vehicle service station and repair shop, a use permitted in the H-Business District. *Novello v. Zoning Board of Adjustment,* 384 Pa. 294, 121 A. 2d 91 (1956). West Eagle Road is a heavily traveled two-lane state highway, 30 feet in width, and at the location of the proposed car wash and filling station is used by an average of 12,500 cars daily. It is one of only three roads in the township which provide a cross-

ing of tracks of the Philadelphia and Western Railroad. The Cherbel site has frontage only on Eagle Road, and the only means of ingress and egress to its proposed facility would be from Eagle Road. Immediately to the west of the Cherbel site is an Esso gasoline service station; adjoining the Esso service station is a large lumber yard; adjacent to the lumber yard is a Shell gasoline service station; at Belvedere and Eagle Roads, across from the Cherbel site is a "7-11" store; and diagonally across from the Cherbel site and adjacent to the railroad tracks is the plant of the Philadelphia Chewing Gum Company. Into this area appellants wish to introduce a car wash which, according to plans submitted at the hearings before the Board by Cherbel, will have a capacity of 90 cars per hour and two pump islands for the dispensing of gasoline, with but 47 on-site parking spaces for cars waiting to be washed.

The Board and the court below properly considered the anticipated increase in traffic. *Blair v. The Board of Adjustment,* 403 Pa. 105, 169 A. 2d 49 (1961). Pertaining to this crucial factual issue the Board found:

"1. [The] [n]ew plan presented increases stacking space for cars waiting to be washed but still provides less than two-thirds space available and needed on busy winter days by closest car wash to the proposed location.

"2. There is unique traffic condition on West Eagle Road. A traffic tie-up on West Eagle Road requires a two-mile drive to reach Manoa or Ellis Roads to get an alternative way of crossing the railroad tracks.

"3. West Eagle Road is a State highway already heavily traveled with bumper conditions existing, especially in the morning and evening when people are going to and from work. It is a 30 feet cartway with a white

line dividing the two-way traffic flow. Approximately 50 percent of drivers entering a car wash at the requested location would have the double hazard of slowing or stopping in the traffic lane in which they are traveling and the greater hazard of crossing the oncoming traffic lane. In leaving the car wash, approximately 50 percent of the drivers would have the double hazard of cutting across the traffic lane going west and the equally serious hazard of getting into the traffic lane going east.

". . . .

"5. Testimony presented and studies by the Board show that all car washes send cars onto the highway dripping water. The drying equipment for full service car washes and exterior car washes is the same, but the amount of dripping and resulting icing of highways is much more serious from an exterior wash such as the one proposed than from a full service wash, which includes wiping water from car and at least three to five minutes standing before entering highway.

"6. The Code provides for businesses such as a car wash in 'I' Industrial Zone without a special exception, and the Board is of the opinion no other use allowed in 'H' Business would create the danger of icing the highway, the double hazard of stopping on a heavily traveled highway and crossing against the oncoming traffic and the possibility of drawing to a 72 feet frontage up to 1000 cars in one busy winter day. The only possible way a car wash can safely be permitted on a heavily traveled highway is on a divided highway."

We agree with the court below that the record supports these findings.

In *Blair v. The Board of Adjustment, supra,* Justice COHEN wrote concerning traffic patterns resulting from gasoline service stations: "A gasoline service sta-

tion requires the physical presence of the vehicle in order to perform its function and justify its existence. In most cases the customer cannot park his automobile across the street and accomplish the business normally transacted at a service station. Rather, he must drive onto the premises. Consequently abnormal traffic patterns result, whether or not accompanied by appreciable increase in the volume of traffic." 403 Pa. at 107, 169 A. 2d at 50. The same considerations, with perhaps more emphasis, apply to a car wash.

In *Blair,* the grant of the exception would have resulted in five service stations located within a 350 foot radius of a busy intersection; here, allowance of the requested use would result in three filling stations and a car wash located within little more than one block of an intersection. In both cases, the proposed use would be located within a commercially developed area along a heavily traveled state highway. The *Blair* road accommodated an average volume of 10,800 vehicles[1] daily. West Eagle road carries in the same period 12,-500. The court below properly relied upon the *Blair* case as authority for the Board's action in the instant case.

Neither *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587 (1957), nor *The Appeal of the Community College of Delaware County,* 435 Pa. 264, 254 A. 2d 641 (1969), compel a contrary result. In both, broad-based community uses were proposed, to which any increase in traffic would be incidental. Here, as Judge REED aptly observed for the court below: "In the present case traffic is everything; it is the reason for the use, and its control and effect is the crux of the matter."

---

[1] This fact is ascertained by reading the printed record supplied the Supreme Court.

We have carefully considered appellant's contention that it was not afforded due process at the Board hearings. The proceedings were indeed spirited and protestants of Cherbel's application, including a township commissioner, displayed an indecorous hostility to the project. The record, however, does not support appellant's charge that the Board was improperly influenced by this opposition or that its decision was motivated by considerations of matters other than the merits of the application as shown by the record. It is true that members of the Board vigorously examined some of the appellant's witnesses, but this questioning was within the bounds of relevance. The skepticism expressed by members of the Board as to the testimony of Cherbel's traffic expert regarding conditions on West Eagle Road, a matter within the Board members' personal experience, was understandable. Further, Cherbel's application seems to have been the second such for the same use at the same location within a period of eight months, the first having also been denied after hearing. It is not surprising that the neighborhood viewed the reprise with some impatience.

At the second of the two Board hearings, the township's solicitor on two occasions answered questions of a legal nature asked him by Board members. In both instances, his replies were partial to fairness in the proceedings. First, he told the Board in effect that applicant's agent had given a responsive and legally adequate answer to the Board's inquiries as to his employment and, second, he advised a Board member desiring to read some published material into the record that he could not be both a member of the Board and a witness. The only other allegedly improper participation of the township solicitor referred to by appellant is a colloquy between him and applicant's counsel as to the extent and meaning of the stipulation under

which Judge REED had remanded the matter to the Board for a second hearing. Judge REED had occasion to refer to this stipulation in his opinion subsequently filed and his interpretation conformed to that of the township's solicitor. Although this court in *Limekiln Golf Course, Inc. v. Zoning Board of Adjustment of Horsham Township*, 1 Pa. Commonwealth Ct. 499, 275 A. 2d 896 (1971), filed after the hearings in this matter, disapproved the practice of counsel serving both an interested municipality and the Zoning Board, we did not hold that such practice is, without more, a denial of due process. In the absence of any rulings by this Board founded on the township solicitor's advice actually harmful to the appellant, we do not feel compelled to remand.

Finally, the appellant complains of the action of the court below in refusing the prayer of its petition, made after the Board hearing had closed, that the court hear additional evidence. This evidence, it claimed, would prove that the chairman of the Zoning Hearing Board had acted in this case while possessed of a disqualifying interest. The petition, however, did not set forth the facts upon which this charge was based and there is no indication in this record that other offer of proof was made to the court below. Section 1009 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L.    , No. 247, 53 P.S. §11009, confers upon the courts discretion to hear additional evidence where required for a proper consideration of the appeal. We cannot conclude that this discretion is abused where the court is not told the evidence sought to be adduced.

Affirmed.