Dana S. Bray and William L. Feeley *v.* Zoning Board of Adjustment and Somerton Civic Association. City of Philadelphia, Appellant.

Argued October 5, 1979, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Steven H. Kitty,* Assistant City Solicitor, with him *Sheldon L. Albert,* City Solicitor and *Barbara S. Gilbert,* Deputy City Solicitor, for appellant.

*Frank M. Jackson,* with him *Harry Schwartz, Eugene E. Kellis,* and *Richelle D. R. Hittinger,* for appellee.

OPINION BY JUDGE CRAIG, January 17, 1980:

The City of Philadelphia has brought this zoning appeal from a decision of the Court of Common Pleas of Philadelphia County which reversed the Philadelphia Zoning Board of Adjustment's denial of an application to establish a roller-skating rink in an Area Shopping Center District under Section 14-309(2)(j) of the Philadelphia Zoning Code (code). That section allows, by board certificate, a "use of the same general character" as the uses absolutely permitted in that district. There is no dispute that a roller rink, as a kind of use, falls properly within that threshold definition.

We have recognized that a board certificate in Philadelphia's lexicon is the same as a special exception elsewhere. *Marwood Rest Home, Inc. v. Zoning Board*

*of Adjustment*, 22 Pa. Commonwealth Ct. 567, 349 A.2d 800 (1976); *Zoning Board of Adjustment of Philadelphia v. Liberty Bell Medical Center*, 17 Pa. Commonwealth Ct. 213, 331 A.2d 242 (1975).

In the Philadelphia code, Section 14-1803(1) states general "criteria" for the granting of all board certificates. In *Liberty Bell Medical Center, supra*, 17 Pa. Commonwealth Ct. at 215, 331 A.2d at 243, we quoted that subsection in full, reciting items (a) through (h) concerning, in summary: (a) traffic congestion, (b) fire and safety danger, (c) overcrowding or concentration of population, (d) impairment of light and air to adjacent property, (e) adverse effect on transportation or other community facilities, (f) detriment to public health, safety or general welfare, (g) harmony with spirit and purpose of the zoning code, and (h) adverse effect upon redevelopment plan or comprehensive plan.

Because subsection (2) of Section 14-1803 states that "the applicant shall have the duty of presenting evidence relating to the criteria set forth herein," the court below astutely perceived that a proper analysis here depends upon distinguishing between the "burden" of "going forward with evidence" and the burden of proof. We agree that we therefore must take note of Professor Wigmore's rational distinction between the "burden of the risk of non-persuasion" (persuasion burden) as to establishing a fact-in-issue by a preponderance of the weight of evidence, and, on the other hand, the burden or duty of "going forward with the evidence" (evidence presentation duty) with respect to a fact-in-issue. The former burden never shifts because it is operative only after the whole case is in before the trier of fact; it remains where the substantive law places it, conventionally as to a plaintiff's basis of claim or an affirmative defense. The evidence presentation duty, although it usually falls initially

upon the party who has the persuasion burden, may nevertheless shift from one party to another through the operation of logic, presumptions and rules of law.[1]

As to special exceptions, our cases have repeatedly made clear that the applicant has both the persuasion burden and the initial evidence presentation duty to show that the proposal complies with the "terms of the ordinance" which expressly govern such a grant. *Lower Merion Township v. Enokay, Inc.*, 427 Pa. 128, 233 A.2d 883 (1967) and cases cited therein; *Sites v. West Goshen Zoning Hearing Board*, 5 Pa. Commonwealth Ct. 78, 287 A.2d 909 (1972); *Berlant v. Lower Merion Township Zoning Hearing Board*, 2 Pa. Commonwealth Ct. 583, 279 A.2d 400 (1971). This rule means the applicant must bring the proposal within the specific requirements expressed in the ordinance for the use (or area, bulk, parking or other approval) sought as a special exception. Those specific requirements, standards or "conditions" can be classified as follows:

1. The kind of use (or area, bulk, parking or other approval)—i.e., the threshold definition of what is authorized as a special exception;

2. Specific requirements or standards applicable to the special exception—e.g., special setbacks, size limits; and

3. Specific requirements applicable to such kind of use even when not a special exception— e.g., setback limits or size maximums or parking requirements applicable to that type of use whenever allowed, as a permitted use or otherwise.

Every special exception will always involve item 1 above and must involve item 2 if it is not to involve an unconstitutional delegation of legislative power.

---

[1] 9 Wigmore Evidence, §§24852489 (3rd Ed. 1979).

*Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A.2d 587 (1957). Item 3 above, where present, is necessarily part of the threshold requirement because the special exception use naturally must comply with the requirements applicable to that type of use throughout the ordinance, unless expressly exempted from them.

The important characteristic of a special exception is that it is a conditionally permitted use, legislatively allowed if the standards are met. *City of Pittsburgh v. Herman,* 7 Pa. Commonwealth Ct. 243, 298 A.2d 624 (1973); *Berlant, supra.* Thus an applicant, by showing compliance with the specific requirements of the ordinance, identifies the proposal as one which the local legislation expressly designates to be appropriate in the district and therefore presumptively consistent with the promotion of health, safety and general welfare; hence it is logical that, as noted below, the Pennsylvania decisions have placed on the objectors the "burden" of showing the proposal to be detrimental to public health, safety and welfare. *Borden Appeal,* 369 Pa. 517, 87 A.2d 465 (1952); *Root v. Erie Zoning Board of Appeals,* 180 Pa. Superior Ct. 38, 118 A.2d 297 (1955); *Zoning Hearing Board v. Konyk,* 5 Pa. Commonwealth Ct. 466, 470-71, 290 A.2d 715, 718 (1972).

Specificity is the essential characteristic of operative special exception requirements in an ordinance. The Pennsylvania Supreme Court has long defined a special exception as one allowable where requirements and conditions *detailed* in the ordinance are found to exist. *Lukens v. Ridley Township Zoning Board,* 367 Pa. 608, 80 A.2d 765 (1951); *Devereux Foundation, Inc. Zoning Case,* 351 Pa. 478, 41 A.2d 744 (1945).

Accordingly, when municipalities have put general, non-specific or non-objective requirements into the ordinance with respect to special exceptions, our decisions have usually not seen such general provisions

as part of the threshold persuasion burden and presentation duty of the applicant. Judge KRAMER stated the reason in *In Re: Appeal of George Baker,* 19 Pa. Commonwealth Ct. 163, 168, 339 A.2d 131, 135 (1975) as follows:

> It is in the nature of a special exception to require that the applicant meet reasonably definite conditions, and it would be manifestly unfair to require him to prove conformity with a policy statement, the precise meaning of which is supposed to be reflected in *specific* requirements. . . . Any other view would enable the Board to assume the legislative role. . . . (Emphasis in original.)

In *Borden Appeal, supra,* even though the ordinance expressly called for special exceptions to be decided "in harmony with the general purpose and intent of this ordinance," the Supreme Court made clear that the objectors had the burden of proof— that is, the persuasion burden—with respect to detriment to health, safety and general welfare. In *City of Pittsburgh v. Herman, supra,* the burden as to the requirement that the special exception be found to be "not more detrimental to the neighborhood" was left upon the objectors. Examination of the holdings in those cases show that the objectors, as to general detriment to health, safety and welfare, normally have the persuasion burden (and also the initial evidence presentation duty, as a corollary). The effect has been similar to treating the question of general detriment in the same way as affirmative defenses are treated in other cases.

However, the decisions also say that the zoning ordinance may place the "burden of proof" upon the applicant as to the matter of detriment to health, safety and general welfare, which was the ordinance language in *Derr Flooring Co. v. Whitemarsh Township*

*Zoning Board,* 4 Pa. Commonwealth Ct. 341, 285 A.2d 538 (1972). It appears that such ordinance reference to "burden of proof" thus places only the persuasion burden on the applicant because the same case makes clear that the objector retains the evidence presentation duty as to such matters; the opinion states:

> This is not to say, however, that the burden is such that the applicant must negate every conceivable and unvoiced objection to the proposed use. That would be an unreasonable burden. Once an applicant has met the burden of proving his compliance with all of the specific conditions and requirements of the zoning ordinance, he has met his initial burden of proof. If the protestants to the issuance of a special exception raise specific issues concerning health, safety and general welfare, then the burden would continue to be with the applicant. The applicant would be required to come forward to meet the objections so as to show that the intended use would not violate the health, safety and general welfare of the community with relation to such objections. It would then be the duty of the Board in the exercise of its discretionary power to determine whether or not the applicant had met his burden of proof.

4 Pa. Commonwealth Ct. at 347-48, 285 A.2d at 542. Thus *Derr* indicates, as to specific requirements of the zoning ordinance, the applicant has the persuasion burden, as well as the initial evidence presentation burden. The objectors have the initial evidence presentation duty with respect to the general matter of detriment to health, safety and general welfare, even if the ordinance has expressly placed the persuasion burden upon the applicant, where it remains if detriment is identified. Hence it appears that an ordinance provision placing the "burden of proof" as to general

police power detriment refers to the persuasion burden but, contrary to the rule that the initial evidence presentation duty follows persuasion burden, the nature of that subject matter requires that the evidence presentation duty be upon the objector in order to identify the facts-at-issue.

Where the ordinance attempts to place upon the applicant a burden of proof even more vague in its nature, we have refused to give it effect. In *Cherbel Realty Corp. v. Zoning Hearing Board,* 4 Pa. Commonwealth Ct. 137, 285 A.2d 905 (1972), where the ordinance purported to place upon the applicant the "burden of proof" to show that the special exception would be "in harmony with the general purposes and intent" of the zoning ordinance, we said:

> This language is so vague that the lower court was correct in concluding that the applicant's only burden was to prove that its request for special exception conformed to the requirements of the ordinance and that the opposition to the exception must carry the burden of proving that the proposed use would be contrary to the public interest.

4 Pa. Commonwealth Ct. at 139, 285 A.2d at 906.

As indicated above, we are indebted to the perceptivity of Judge ROSENWALD, in the court below, for pointing up the need to review where our decisional line has led. The principles developed are not as complicated as they may sound upon recitation. In outline form, the rules concerning initial evidence presentation duty (duty) and persuasion burden (burden) in special exception cases may be restated as follows:

> *Specific requirements,* e.g., categorical definition of the special exception as a use type or other matter, and objective standards governing such matter as a special exception and generally:

The applicant has both the duty and the burden.

*General detrimental effect,* e.g., to the health, safety and welfare of the neighborhood:

Objectors have both the duty and the burden; the ordinance terms can place the burden on the applicant but cannot shift the duty. Derr, supra.

*General policy concern,* e.g., as to harmony with the spirit, intent or purpose of the ordinance:

Objectors have both the duty and the burden; the ordinance terms cannot place the burden on the applicant or shift the duty to the applicant. Cherbel, supra.

With this background, we now face a new point in that the Philadelphia ordinance attempts to shift the *evidence presentation duty* to the applicant with respect to *all* the matters in Philadelphia Code Section 14-1803(1).

Turning to our previous decisions on this very same provision of the Philadelphia Code, we note that, in *Pennypack Manor Nursing Home, Inc. v. Petrella,* 35 Pa. Commonwealth Ct. 367, 387 A.2d 139 (1978), *rearg. den.* 35 Pa. Commonwealth Ct. 540, 388 A.2d 753 (1978), we clearly saw it as relating to the evidence presentation duty. However, in *Liberty Bell Medical Center, supra,* we refused to allow it to shift that duty to the applicant with respect to item (f), detriment to public health, safety or general welfare (consistently with *Derr, supra*) or as to (g) harmony with the spirit and purpose of the zoning ordinance (consistently with *Cherbel, supra*). *Marwood Rest Home, Inc., supra,* is not inconsistent; although that opinion contains dictum to the effect that the applicant has the "burden" as to all of the criteria in Section 14-1803(1), the decision actually turned upon the pro-

posal's noncompliance with very specific sideyard and parking requirements in other sections of the ordinance.

Aside from items (f) and (g) of Section 14-1803 (1), we have treated applicant as having the evidence presentation duty with respect to (a), the traffic congestion criterion, and (b), the fire and safety criterion, in *Rubin v. Zoning Board of Adjustment*, 1 Pa. Commonwealth Ct. 406, 274 A.2d 208 (1971), and *Liberty Bell Medical Center, supra*, and as to (e), public facilities, in *Liberty Bell Medical Center*. The latter opinion inferentially describes the ordinance criteria—other than (f) and (g)—as "more specfic requirements," and thus suggests that (c) overcrowding, (d) light and air, and (h) effect on comprehensive or redevelopment plan, are also "specific." Hence, applicant has the initial duty and persuasion burden as to (a) through (e) and (h), while objectors have the same duty and same burden as to (f) and (g). Note that the end result is that the "duty" language of the Philadelphia ordinance accomplishes no more and no less than our previous decisions have prescribed; where the standards are deemed to be "specific" (and only there) the applicant has the evidence presentation duty anyway.

Therefore, with the assistance of such a review of the persuasion burden and evidence presentation burden in general with respect to special exceptions, and specifically with respect to Section 14-1803 of the Philadelphia Code, we are enabled to turn to the record in this case to examine these questions:

Did applicants fulfill their evidence presentation duty with respect to "specific" criteria (a) through (e) inclusive and (h)?

If so, and if any contrary evidence was presented, did applicants meet their persuasion burden with respect to those specific criteria?

If applicants have fulfilled that duty and met that burden, has the objecting municipality fulfilled its evidence presentation duty and met its persuasion burden with respect to the general matters of (f), detriment to health, safety and welfare, and (g), harmony with the spirit and purpose of the ordinance?

These are the only questions remaining because it is undisputed that the proposed type of use here falls within the threshold definition of an allowable type of use, and no question has been raised as to noncompliance with any other objective requirements of the ordinance pertaining to such a use type.

The zoning board decision does not provide us with much aid. Although it contains a conclusion of law that the applicant has not met the "burden of proof" with respect to the list of ordinance criteria other than (d), light and air, the statements labeled by the board as findings of fact are not really such, but are merely summaries of the opposing evidence of both sides.

We agree with the lower court "that the Zoning Board did both commit an error of law and abuse its discretion. . . ."

Before turning to (a) the traffic congestion criterion, we look at the other specific standards, which have not been seriously controverted, with the possible exception of (h). Although the objecting neighbors argue that the applicant did not come forward with evidence in the very terms of some of those standards, we examine the record for facts, not labels or generalities.

The fire and safety danger standard (b) was met initially by proof that a masonry building was proposed and that other precautions and controls are planned. There was no opposing evidence directed to the point.

As to overcrowding (c), even if we take the term as referring to customer numbers as well as to residential density and lot coverage, the evidence showed no basis for concern about the number of patrons (100-300) as such, while residential units are not involved and no lot coverage problem has been cited.

The city and the objectors, like the board, have made no argument as to what has been shown affecting (d), light and air to adjacent properties, because building height is to be 20 feet, less than the 35 feet allowed.

With respect to (e), effect upon transportation and community facilities such as sewers and water supply, the proof that only a snack bar is proposed eliminates concern about the factor.

Criterion (h), effect upon the comprehensive plan or area redevelopment plan, is sufficiently specific that we distinguish it from the general policy criterion of harmony with the spirit and purpose of the zoning; in the context of the Philadelphia Code, both an area redevelopment plan and the "Comprehensive Plan" are explicit documents to which reference may be made. In this case, no redevelopment plan has been mentioned, and the Comprehensive Plan calls for commercial use in this location. The expressed opposition of the City Planning Commission to "piecemeal development of this site" is an opinion external to the official plans.

The remaining criterion is (a), the familiar one of traffic congestion. We agree with the court below that "not every anticipated increase in traffic will justify the refusal to grant a special exception." *Fantastic Plastic, Inc. v. Pittsburgh Zoning Board of Adjustment,* 16 Pa. Commonwealth Ct. 455, 332 A.2d 577 (1975). As stated in the opinion below, to warrant a denial, there must be "not only a likelihood, but a high degree of probability" that the traffic increase would

pose a substantial threat to the health and safety of the community. *Archbishop O'Hara's Appeal*, 389 Pa. 35, 131 A.2d 587 (1957); *Lower Southampton Township v. B.P. Oil Corp.*, 16 Pa. Commonwealth Ct. 108, 329 A.2d 535 (1974). The court below noted:

> The record does not, in fact, reveal any more than an anticipated minimal increase in traffic. This is particularly so in light of the Appellants' testimony relating to the average age of the patron skaters, the use of bicycles and carpools, the limited area to be serviced by the rink, and the availability of adequate off-street parking as well as a 'turnaround' for discharging passengers.

Hence the trial court concluded:

> Even were the instant record to indicate an anticipated increase in traffic of significance, it would fall far short of revealing the requisite high degree of probability that such increase would be detrimental to the health and safety of the community. This is particularly true in light of those other uses which, under the terms of the Zoning Code, are expressly permitted in the subject Area Shopping Center District.

We also agree with the court below that the record does not show anything definite with respect to those matters as to which objectors had the evidence presentation duty and persuasion burden: (f) general detriment, and (g) general policy concern. As the court below said:

> A careful review of the record leads this Court to the inescapable conclusion that the appellants did satisfy their statutory burden of presenting evidence relating to the criteria set forth at Section 14-1803(1) of the Zoning Code, and that the protestants failed to set forth evidence of detriment sufficient to support the Board's denial of

536

the requested use certificate. The Zoning Board in its decision to the contrary displayed 'a capricious disregard of the testimony and evidence offered.'

We will therefore affirm the court below.

ORDER

AND Now, this 17th day of January, 1980, the order of the court below dated December 30, 1977, is affirmed.

This decision was reached prior to the expiration of the term of office of Judge DiSALLE.