518 A.2d 614

Ad Hoc Committee for the Betterment of Port Richmond et al., Appellants *v.* Zoning Board of Adjustment of the City of Philadelphia, City of Philadelphia and Camden Iron & Metal, Inc., Appellees.

Submitted on briefs October 3, 1986, to Judges MACPHAIL, DOYLE and BARRY, sitting as a panel of three.

*Louis J. Gagliardi,* for appellants.

*Joy J. Bernstein,* for appellee, Zoning Board of Adjustment of the City of Philadelphia.

*Carl S. Primavera, Mesirov, Gelman, Jaffe, Cramer & Jamieson,* for intervenor, Camden Iron & Metal, Inc.

OPINION BY JUDGE DOYLE, December 8, 1986:

This is an appeal by the Ad Hoc Committee for the Betterment of Port Richmond (Committee) from an order of the Court of Common Pleas of Philadelphia County affirming a determination of the Zoning Board of Adjustment of the City of Philadelphia (Board) which granted a certificate[1] for the storage of scrap metal and dismantling or wrecking of used motor vehicles to Camden Iron & Metal, Inc. (Camden).

The case began when Camden filed an application with the Department of Licenses and Inspection (Department) for a zoning and/or use permit for premises located at 2501-2899 Richmond Street. The subject property is located in a district zoned G-2 Industrial. The Department referred the matter to the Board because the storage of scrap metal and dismantling or wrecking of used motor vehicles in a G-2 Industrial district requires a certificate from the Board pursuant to Section 14-508(2)(b) of the Philadelphia Zoning Code (Code). This Section, which pertains to uses in G-2 Industrial districts, provides:

---

[1] A Board certificate in Philadelphia is the same as a special exception elsewhere. *Bray v. Zoning Board of Adjustment,* 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980).

*Use Regulations-With Certificate.*

The following uses will be permitted in this district only if a Zoning Board of Adjustment Certificate is obtained:

. . .

(b) Dismantling or wrecking of used motor vehicles, storage and sale of dismantled, partially dismantled, inoperative or wrecked vehicles or their parts. . . .

The Board conducted a public hearing during which both Camden and the Committee presented live witnesses and documentary evidence. Subsequent to the hearing the Board determined that Camden had met its burden to show that it was entitled to a certificate under the criteria set forth in Section 14-1803 of the Code[2] and hence granted the certificate. The Board

---

[2] Section 14-1803 of the Code provides:

**Criteria for Granting Zoning Board of Adjustment Certificates**
(1) The Zoning Board of Adjustment shall consider the following criteria in granting a Zoning Board of Adjustment Certificate under §14-1801(1)(d):

(a) that the grant of the Certificate will not substantially increase congestion in the public streets;

(b) that the grant of the Certificate will not increase the danger of fire or otherwise endanger the public safety;

(c) that the grant of the Certificate will not overcrowd the land or create an undue concentration of population;

(d) that the grant of the Certificate will not impair an adequate supply of light and air to adjacent property;

(e) that the grant of the Certificate will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

(f) that the grant of the Certificate will not adversely affect the public health, safety, or general welfare;

(g) that the grant of the Certificate will be in harmony with the spirit and purpose of this Title, and

(h) that the grant of the Certificate will not adversely affect in a substantial manner any area redevelopment plan

order also adopted the recommendations of the City Planning Commission which in a May 15, 1985 letter to the Board had suggested, *inter alia,* that the certificate be limited to Camden's leasehold.[3]

The Committee appealed the Board's decision to the common pleas court which, without taking additional evidence, affirmed. Appeal to this Court followed. On appeal the Committee raises the same four issues for our consideration which were raised below. We will examine its arguments *seriatim* keeping in mind that where, as here, the trial court does not take additional evidence, our scope of review in a zoning appeal is limited to determining whether the Board committed an error of law or abused its discretion. *Fabrizi v. Zoning Hearing Board of the Borough of Brentwood,* 91 Pa. Commonwealth Ct. 340, 497 A.2d 276 (1985).

The Committee first asserts that Camden failed to meet its burden of establishing that its proposed use is one actually permitted in a G-2 Industrial district with the grant of a certificate. Specifically, the Committee contends that Camden in its petition to the Board stated that its proposed use was for a steel processing facility and that the evidence presented did not in fact show that the proposed use was the dismantling and wrecking of used motor vehicles. Hence, the Committee argues, the Board erred in granting the certificate. What the testimony disclosed was that Camden intended to use an automobile shredding machine that would take precrushed automobiles that have been stripped, and shred them into fist-sized pieces of material. N.T. 8-9.

---

approved by the City Council or the Comprehensive Plan for the City approved by the City Planning Commission.

(2) The applicant shall have the duty of presenting evidence relating to the criteria set forth herein.

[3] Camden's leasehold consists of a seventeen acre portion of Conrail's 200 acre Port Richmond yard.

The Committee contends that Section 14-508(2)(b) of the Code encompasses "the traditional type of automobile junkyard where automobiles are brought intact and dismantled stripping them of their parts which are then stored and sold." Committee's Brief p. 13. It then argues that the *shredding activity* does not, as a matter of law, constitute dismantling and wrecking and hence Camden has not proved its entitlement to a certificate.

We believe, however, that our decision in *Wojtowicz v. Hanover Township Zoning Hearing Board*, 23 Pa. Commonwealth Ct. 12, 350 A.2d 419 (1976) compels a contrary conclusion. In *Wojtowicz,* as here, the question was whether a scrap metal processing plant which engaged in shredding, bailing, and shearing metals constituted a junkyard under the applicable township ordinance. The term "junkyard" employed in the ordinance was undefined. We said in *Wojtowicz* that because the term was undefined it should be interpreted in its broadest sense and held that the metal processing plant constituted a junkyard. In the instant case while the term junkyard does not appear in the pertinent Code Section, the Committee argues, as noted above, that this section only encompasses junkyards in the traditional sense. We disagree. We believe that the activities here in question should be considered junkyard activities and moreover are sufficiently akin to the traditional method of wrecking, dismantling, cutting and sorting scrap so as to fall within the Code provisions. Accordingly, we hold that the shredding activities did constitute dismantling and wrecking as those terms are used in the Code.

The Committee next contends that the proposed use is prohibited by law in a G-2 Industrial district because Section 14-508(3) of the Code generally prohibits uses in a G-2 Industrial district which are specifically listed as permitted uses in a district identified as Least

Restricted District. Language identical to that in Section 14-508(2)(b) of the Code, that would allow this use in the G-2 Industrial district, does appear as a specific permitted use in the Least Restricted District as well. *See* Section 14-509(1)(f). It would thus appear that what is granted on the one hand (§14-508(2)(b)), is taken away by the other (§14-508(3)). To resolve this conflict the Committee first advocates reliance upon Section 14-509(1)(a) of the Code which provides:

'Least Restricted' Industrial District
*Use Regulations.* The specific uses permitted in this district shall be the erection, construction, alteration or use of buildings and/or land for:
 (a) the uses permitted in 'G-2' General Industrial Districts, with all use qualifications removed, except that when any use is herein defined, listed, or prohibited, the regulations of this district shall apply.

This provision, however, governs only uses permitted in Least Restricted Industrial Districts as used within that district itself. Similarly faulty is the Committee's reliance upon the principle of statutory construction that where clauses are irreconcilable the last clause in order shall prevail.[4] *See* Section 1934 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1934. This is because Section 1934 *explicitly* provides that it applies *only* in instances where the conflict is not between a particular statute and the general one. The instant case presents exactly such a situation; the exclusionary clause appearing in Section 14-508(3) applies generally to G-2 Industrial Districts, whereas the clause appearing in Section 14-508(2)(b), which *specifically* permits the use in a G-2 Industrial district, is the specific provision. Hence we hold that Section 14-508(2)(b) must prevail.

---

[4] The rules of statutory construction apply with equal force to ordinances. *Appeal of Neshaminy Auto Villa, Ltd.,* 25 Pa. Commonwealth Ct. 129, 358 A.2d 433 (1976).

Next, the Committee argues that the Board failed to make findings of fact in support of its decision. We note that pursuant to Section 555 of the Local Agency Law, 2 Pa. C. S. §555, an adjudication of a local agency is required to contain "findings and the reasons for the adjudication. . . ." The Board's findings are expressed more as a summary of *all* of the evidence presented on both sides than as formal findings specifically resolving credibility conflicts. We do not believe, however, that the Board's format here is fatal to its twenty-six page decision, because it is obvious from the Board's *detailed* conclusion that it resolved credibility questions in favor of Camden. We note in addition that the competency or sufficiency of Camden's evidence supporting conclusion of law number six is not challenged.[5] When considering

---

[5] Board conclusion six reads in pertinent part:

6. The applicant has met the criteria required for the granting of a certificate as provided for under Section 14-1803 of the Philadelphia Zoning Code in that the grant of the Certificate will:

 a. not substantially increase congestion in the public streets;

 b. not increase the danger of fire or otherwise endanger the public safety;

 c. not overcrowd the land or create an undue concentration of population;

 d. not impair an adequate supply of light and air to the adjacent property;

 e. not adversely affect transportation or unduly burden water, sewer, school, park or other public facilities;

 f. not adversely affect the public health, safety or general welfare;

 g. be in harmony with the spirit and purpose of this Title; and,

 h. not adversely affect in a substantial manner any area redevelopment plan approved by City Council or the Comprehensive Plan for the City approved by the City Planning Commission.

These detailed conclusions distinguish this case from our decision in *Turner v. Civil Service Commission*, 75 Pa. Commonwealth Ct. 138, 462 A.2d 306 (1983).

sufficiency of the facts our Supreme Court has required that "[e]nough must be stated to enable the Court to see that there was due consideration and weighing of the evidence in its legal relations." *Lindquist Appeal,* 364 Pa. 561, 564-65, 73 A.2d 378, 381 (1950). We hold that the Board's adjudication when read in its entirety meets this test, and hence dismiss the Committee's challenge on this ground.

The Committee's final argument is that the certificate was granted for an excessively large tract of land or in the alternative, that the certificate is fatally ambiguous. The assertion is that because the application refers to the entire 200 acre plot of land the certificate is overbroad because Camden's leasehold is only seventeen acres, *see* n.3. First, it is obvious that Camden would have standing only with respect to its leasehold and hence only the use of seventeen acres could have been before the Board. Second, the Board's order specifically refers to and adopts the City Planning Commission's suggestions which appeared in its letter. One of these suggestions as earlier noted, was that the grant of the certificate be restricted to the seventeen acre leasehold. Additionally, included in the record is testimony that the subject property before the Board is only the seventeen acres. There was also introduced as an exhibit a copy of the lease Camden has with its landlord. We thus believe that the Board order clearly refers only to the seventeen acres and is not overbroad.

The Committee's related contention that the Board order is fatally ambiguous because the letter from the Planning Commission is dated May 15, 1985 but it is referred to in the Board's order as the letter of May 14, 1985 is totally without merit. The Committee does not argue that there was more than one letter which would cause confusion or that the Board was in fact confused. To suggest that such a minor typographical error would

render the Board order fatally ambiguous is, to say the least, to argue the extreme and we reject such a notion. Based upon the foregoing discussion the order of the Court of Common Pleas of Philadelphia County is affirmed.

ORDER

NOW, December 8, 1986, the order of the Court of Common Pleas of Philadelphia County, No. 1977 June Term 1985, dated January 13, 1986, is hereby affirmed.