537 A.2d 926

The Shadyside Action Coalition, a non-profit Pennsylvania Corporation, Appellant *v.* The Zoning Board of Adjustment of the City of Pittsburgh and Joseph DeStefino, Appellees.

Walnut Street Associates, Appellant *v.* The Zoning Board of Adjustment of the City of Pittsburgh and Joseph DeStefino, Appellees.

Argued October 8, 1987, before Judges BARRY and COLINS, and Senior Judge NARICK, sitting as a panel of three.

*Douglas W. Reed, Berger, Reed and Green,* for appellant, The Shadyside Action Coalition.

*William R. Grove,* with him, *Leonard M. Mendelson, Hollinshead and Mendelson,* for appellant, Walnut Street Associates.

*Robert D. Monsour,* for appellee, Joseph DeStefino.

OPINION BY SENIOR JUDGE NARICK, February 16, 1988:

In separate appeals consolidated by this Court, the Shadyside Action Coalition (SAC) and Walnut Street Associates (WSA), referred to collectively as Appellants, seek reversal of orders of the Court of Common Pleas of Allegheny County which dismissed their appeals from an order entered by the Zoning Board of Adjustment (Board) of the City of Pittsburgh granting Joseph De-Stefino's (Appellee's) application for a building permit.

On March 8, 1983, Appellee filed his original application for a permit to erect a second and third story ad-

dition over an existing one-story structure.[1] Citing the detrimental effect the proposed addition would have on abutting and adjacent properties, as well as on the community in general, and noting Appellee's failure to demonstrate the necessary hardship to be entitled to a parking variance, the Board denied the application in a decision dated May 5, 1983. It determined that 23 parking spaces were required for the proposed expansion, but that Appellee only could provide two. On May 16, 1983, Appellee again filed an application for the proposed expansion, except that this time six parking spaces were proposed.[2] Because the Board accepted Appellee's theory that the buildings he sought to expand were separate structures, thereby entitling each to a separate parking exemption, it determined that a parking variance was not necessary and granted the application on September 1, 1983. Appellants appealed to the common pleas court, which, without taking additional evidence, affirmed the Board's order and dismissed the appeal. This appeal followed.

Our scope of review is limited to a determination of whether the Board committed a manifest abuse of discretion or an error of law. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). We may conclude that the Board abused its discretion only if its findings are not supported by substantial evidence, *i.e.,* such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

---

[1] The application, as summarized by the Board in its May 5, 1983 decision denying same, sought permission to: "[e]rect a 2nd and 3rd story addition over existing 1 story structure." Exhibit 19.

[2] In its September 1, 1983 decision, the Board noted that the application before it was to "[e]rect 2nd & 3rd story addition over existing structure."

Before we address the key issue of whether the Board's findings are supported by substantial evidence, some background information would be helpful. Appellee's property is located in the Shadyside section of Pittsburgh, and is zoned A-1, Commercial-Residential. Appellee acquired the property, which consisted of several separate buildings, in 1974. At that time, he applied for and was granted permission to erect extensions to connect the buildings. According to the Board's decision, only one page of which appears in the record, Appellee proposed to raze an existing house situated between two of the buildings and erect an extension to connect them, and to build a rear extension to yet another building. The proposal here at issue, twice submitted, was to erect a second and third story atop this existing conglomerate of buildings, which, as the Board noted in its September 1, 1983 decision, Appellee tied together with a facade. The proposed expansion involved the construction of both additional retail space and a health club, which would be an extension of the existing beauty shop. In the A-1 zone, such expansions are permitted only as special exceptions. Pittsburgh Code (Code) §971.03. Having found all the criteria for the granting of a special exception to be present, the Board granted the application.

Among the many side issues presented in the Appellants' briefs, certainly the main issue to be addressed is whether substantial evidence in the record supports the Board's findings regarding whether the proposal met the parking requirements of the ordinance.

The parking requirements for retail uses are specified in Code §989.01: One parking stall is required for every 260 square feet of floor area over 2400 square feet. Floor area is defined generally as that portion of the space which is used for public purposes. *Id.* The Board determined that the proposed two-story expan-

sion involved 7500 square feet of floor area. Despite the lengthy dissertation in WSA's brief concerning the credibility of Appellee's calculations, and why the Board should not have accepted them, there is no doubt that this finding finds ample support in the record. Credibility is a determination to be made by the fact-finder, here the Board, and is not a proper subject for appellate review. *Nassif v. Board of Adjustment of the City of Pittsburgh,* 498 Pa. 530, 448 A.2d 535 (1982).

Having found a total of 7500 square feet, the Board went on to state:

> [i]t appears from a review of some very old plans that there were three separate structures at this location at one time in the past. Therefore, the Appell[ee] should not be penalized because a facade has tied them together. He would be entitled to the 2400 square foot exemption on parking for each of those three separate structures. This means that he would be entitled to an exemption of 7200 square feet at this location.

We have carefully scrutinized the record for *any* indication that the subject property consisted of *three* separate structures in the past. There simply is none. The only evidence regarding the existence of separate structures was in the form of Appellee's architect's testimony, plans and drawings prepared by the architect and photographs of the property. Appellee's witness testified that there were six separate buildings on the property in 1974 when Appellee acquired it. Those six buildings were situated upon four lots and had four separate addresses. The plans this witness prepared, which were submitted into evidence, are consistent with this testimony. The architect further testified that there are now four discernable entities. We are unable to determine how the Board arrived at its finding that three structures existed on this property. Because this finding was

crucial to the Board's conclusion that the parking requirements of Code §989.01 were met, we are constrained to conclude that the Board's decision was not supported by substantial evidence.

Not having found substantial evidence to support the Board's findings, our review would ordinarily end at this point. However, because we believe that legal error would require us to reverse this decision even if the Board's findings were supported by substantial evidence, we will briefly address these erroneous conclusions of law. From our review of the ordinance, there is no indication that past structural realities are relevant to the present-day parking requirements of Code §989.01. That section provides that

> [w]here two or more uses or separate establishments *are* located within the same structure, parking space shall be provided for each use or separate establishment according to the above requirements, except when applicable; only one exemption of 2,400 square feet of floor area shall be taken for the entire structure. (Emphasis added.)

Thus, it appears that the focus of the inquiry should have been upon the number of structures existing at the time of the application, and the number of structures proposed by the addition. The only testimony on this point was as follows:

MR. NUHFER [an objector]: May I ask what would the new structure be like then?

MR. WALKOWSKI: You're going to overlap all four? Is that what you're talking about?

THE WITNESS: Well, yeah. Well, we're submitting only a site plan and I don't happen to think—I think a certain amount of openness in a retail situation is healthy. Even these stores that aren't interconnecting, I would be just as happy if they did to an extent that that's practical. But

'this could be carried through where everything was kept separate right up through.

N.T. 31. Even assuming that separate structures existed when Appellee submitted his application, and that the additions were to have been made separately, Appellee presented no evidence concerning the square footage of floor area of each structure, which would be necessary to calculate the parking requirements under Code §989.01. Lacking such evidence, there was no basis for the Board's conclusion that three 2400 square foot exemptions should have been deducted from the total floor area of 7500 square feet to be added by the proposed new stories.

The Board in this case granted a special exception.[3] A special exception, of course, is a conditionally permitted use, legislatively allowed if the standards of the ordinance are met. *Bray v. Zoning Board of Adjustment*, 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980). As this Court noted in *Bray*, an applicant must bring his proposal within the specific requirements of the ordinance, which would include those "requirements applicable to such kind of use even when not a special exception—e.g., . . . parking requirements applicable to that type of use whenever allowed, as a permitted use or otherwise." *Id*. at 526, 410 A.2d at 911. Because the Board's conclusion that the parking requirements of the ordinance were met was based upon a lack of substantial evidence and an erroneous conclusion of law, the special exception should have been denied, and we need not address the other arguments raised by Appellants.

---

[3] The Board also granted unspecified variances, which were not discussed in its decision. Presumably, these concerned the rear and side yard setbacks. However, in light of our conclusion regarding the improper grant of the special exception, we need not deal with this aspect of the case.

Accordingly, the order of the court of common pleas affirming the Board's decision must be reversed.

ORDER

AND NOW, this 16th day of February, 1988, the orders of the Court of Common Pleas of Allegheny County in the above-captioned matter are hereby reversed.