## Ruddy v. Springfield Township Zoning Hearing Board

*Donald C. Ruddy,* pro se.
*James M. McNamara,* for Springfield Township.
*Rodney D. Henry,* for intervenor Suelke.

HECKLER, *J.,* October 14, 2005—On June 27, 2005, this court entered an order denying the land use appeal filed by Donald C. Ruddy (appellant) from the decision of the Springfield Township Zoning Hearing Board. Appellant had applied to the Zoning Hearing Board seeking a special exception and a series of dimensional variances. Appellant sought this relief so as to enable him to construct a single family residence upon a vacant and dramatically undersized lot which predated zoning in Springfield Township. The Zoning Hearing Board denied appellant's application. He appealed from that denial to this court. After a conference held pursuant to Bucks County Local Rule *27, consideration of the record of the proceedings before the Zoning Hearing Board and consideration of the submissions of the parties hereto, we entered our June 27, 2005 order affirm-

ing the Zoning Hearing Board's decision and denying the appellant's appeal.

Appellant has sought review of our order by the Pennsylvania Commonwealth Court. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), we file this opinion.

## FACTUAL BACKGROUND

The subject premises is located on the north side of Mine Road in a rural upland area of Springfield Township. The parcel has a width of roughly 80 feet on its Mine Road frontage tapering to 60 feet at the rear lot line. Its depth is 200 feet. The lot contains a total of .32 acres. The parcel is unimproved and has remained in single and separate ownership since it was created by subdivision in 1950.

Since the adoption of Springfield Township's first zoning ordinance in 1971, the subject premises has been nonconforming. The subject premises is presently zoned RP Resource Protection District. In that district, the appellant's proposed use—single family residence—is permitted of right. Article 6, Section 603B of the Springfield Township Ordinance establishes the following dimensional requirements:

| | | |
|---|---|---|
| Minimum Lot Area | 3 | acres |
| Maximum Impervious Surface Ratio | .15 | |
| Minimum Lot Width at Building | | |
|    Setback Line | 200 | feet |
| Yards:   Front | 75 | feet |
|    Side (each) | 30 | feet |
|    Rear | 75 | feet |

Appellant acquired the subject premises from the Bucks County Tax Claim Bureau in 1996 with a payment of $559.87. He subsequently obtained a quitclaim deed in November of that year for stated consideration of $1 from its previous owner, Milton Aronauer, who himself had acquired the property at a tax sale.

The Mine Road area of Springfield Township is not served by public water or public sewer. The appellant, a semi-retired developer, seeks the right to erect a single family dwelling on the premises. He does not propose to reside on the premises but rather to establish the premises as an approved building lot and to construct a small residence thereon for sale on a spec basis. Appellant's exhibit 3 as received by the board depicts the subject premises with a proposed construction footprint for a 27.5 foot by 39 foot house. With those dimensions, the residence would have an 86 foot front yard, a 67 foot rear yard, a 9 foot side yard to the west and a 30 foot side yard to the east.

Of necessity, the residence on the premises would be served by an on-site well and septic disposal system. The appellant testified that preliminary testing for a suitable sewage discharge area had been performed on the parcel. However, no Board of Health testing had occurred and no permit for an on-site system had been obtained. A proposed site for a sand mound type system is depicted in the front yard, roughly 10 feet in front of the proposed residential building envelope. Appellant identified a proposed location for a well to the northeastern corner of the parcel. He testified, however, that this proposed location was solely the product of an attempt to achieve separation from adjacent septic drainfields as required

by Department of Health regulations. The proposed well location was not the product of any geological or hydrological analysis of the site.

Intervenor Brian Suelke owns the lot which immediately adjoins the subject premises to the west. His parcel has the same 200 foot depth with a width of 180 feet. His parcel is served by an on-site well and septic disposal system. The well on Mr. Suelke's property is 500 feet deep and produces 3 gallons of water per minute. Beginning two days after he moved into the residence on his property in 2001, Mr. Suelke's well has gone dry at regular intervals. In an attempt to achieve an adequate water supply, Mr. Suelke had a second well drilled in 2003. That well was drilled to a depth of 340 feet and was dry. Mr. Suelke's well driller advised him that the Mine Road area of Springfield Township is the worst area in Bucks County for the establishment of producing water wells.

Ms. Charlene Gero resides in the same neighborhood as the subject premises. She testified at the hearing that she also had encountered situations in which her well was running out of water "all the time." She further testified that she spent "a lot of money" trying to get more water and so far had gotten some. Ms. Gero also alluded to the fact that various of her neighbors had experienced water supply difficulties at least as severe as her own.

## STATEMENT OF MATTERS
## COMPLAINED OF ON APPEAL

Appellant has filed a far less than concise statement of matters complained of in this appeal. In fairness, as we entered an order without supporting opinion, we rec-

ognize that the appellant is not in a position to identify with precision the legal basis for this court's decision. However, as the effect of our order was to uphold the decision of the Zoning Hearing Board below, the appellant should nevertheless be able to define with some greater precision the principles which form the basis for the relief to which he claims he is entitled.

We will not burden this opinion with a restatement of the appellant's eleven distinct assertions of error, as we perceive that many are redundant and others are less than clear. Rather, we will endeavor to discuss what we perceive to be the salient issues in this matter.

## DISCUSSION

Whereas in the instant case, no new evidence is taken on appeal, the scope of our review was limited to determining whether the Zoning Hearing Board abused its discretion, committed an error of law or made findings of fact which are unsupported by substantial evidence. *Moses v. Zoning Hearing Board of the Borough of Dormont,* 87 Pa. Commw. 443, 447, 487 A.2d 481, 483 (1985). Substantial evidence has been defined to be such evidence as reasonable minds would find adequate to support such findings. *Collier Stone Company v. Zoning Hearing Board for Township of Collier,* 710 A.2d 123, 125 (Pa. Commw. 1998).

Our review of the record in this matter indicates that the factual findings of the Springfield Township Zoning Hearing Board had adequate foundation in the record of the hearing held by the board. Thus, we perceive that the only basis upon which the appellant in this matter could have been entitled to a reversal of the

board's decision would be by establishing that the board had erred in its application of existing law to those facts. Evaluating this question requires discussion of both the special exception and the several variances sought by the appellant and the basis upon which the board denied them.

## Special Exception

It is beyond dispute that the vacant parcel acquired by appellant at tax sale is dramatically undersized, having been created long before the advent of municipal zoning in Springfield Township. Article 11 of the Springfield Township Zoning Ordinance defines a nonconforming lot to be "a lot the area or dimension of which was lawful prior to the adoption or amendment of this zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption or amendment." Springfield Township Zoning Ordinance, section 1100. In relevant part, section 1101 of the ordinance concerning Continuation provides:

"A nonconforming lot which lawfully existed prior to the enactment of this ordinance . . . may be developed by special exception for uses permitted in the particular district and shall conform to all other requirements specified in this ordinance other than lot size, provided that the nonconforming lot is in single and separate ownership from adjoining properties." Springfield Township Zoning Ordinance, section 1101(B).

As noted in the factual statement above, the appellant's lot is so small that, in addition to being unable to meet the minimum 3 acre lot size and the minimum lot width

of 200 feet, no building may be erected on the parcel which will meet the side and rear yard requirements. Further, even construction of a modest residence will result in construction of impervious surfaces on the parcel which exceed the maximum impervious surface ratio of .15. As noted above, the appellant separately sought variances from each of these dimensional requirements. If the board was correct in denying those variances, then the special exception application must also fail, as the lot would not conform to "all other requirements."

In addition to the above noted dimensional requirements, appellant's application was also subject to the provisions of section 1009(B) of the ordinance which provides:

"Special exceptions—Where this ordinance has provided for stated special exceptions to be granted or denied by the board pursuant to express standards and criteria, the board shall hear and decide requests for such special exceptions in accordance with such standards and criteria." Springfield Township Zoning Ordinance, section 1009(B).

The ordinance goes on under paragraph C to provide:

"In passing upon applications for special exceptions and variances the board shall consider all relevant factors and procedures specified in other sections of this ordinance, including article 4, Use Regulations, as well as the following: . . .

"(3) Consider the proposed water supply and sanitation systems and the ability of these systems to prevent disease, contamination and unsanitary conditions. Where applicable, a certificate of adequacy of sewage and wa-

ter facilities shall be provided." Springfield Township Zoning Ordinance, section 1009(C).

Appellant presented no testimony before the Zoning Hearing Board which demonstrated that either the water supply or sanitation system proposed for the subject premises would be adequate. He presented no testimony suggesting that the digging of a well on the subject premises, assuming that it reached water, would not adversely affect neighboring properties. As to the suitability of the subject premises for an approved septic disposal system, the only representations made by the appellant on this subject were in response to cross-examination.

"Question: Now, first, concerning the sewers, do you have anything with you today to show the board that the sewage system can be placed on the property?

"Answer: Well, number one, they did come out and set that at the site and we are now exceeding the scope of zoning. We are now getting into the Department of Health and Engineering matters."

When pressed upon the subject, the appellant responded further:

"Answer: The only thing that I have tonight with me is the proposed approval of the sewerage construction concerning the area of the Health Department." See N.T., Zoning Hearing, 8/2/04, p. 21.

These obscure and uninformative responses constitute the high water mark of appellant's representations concerning a sanitation system. When pressed on the subject of water supply, appellant responded:

"Answer: I have a difficult time answering that question because there are two phases. Zoning approval and

then if I flunk on the well, nothing goes anywhere. But that's another step. That's another scope so that we are mixing oranges and apples on this thing." N.T., Zoning Hearing, 8/2/04, p. 22.

Accordingly, appellant presented no evidence which would have enabled the Zoning Hearing Board to discharge its obligation under the ordinance to "consider the proposed water supply and sanitation systems . . . ." This lack was underscored by the fact that the fundamental basis for opposition to the granting of the relief sought by the appellant was the difficulty which Intervenor Suelke and other neighboring properties had experienced with water supply.

We note that the evidence of the intervenor and his neighboring property owners was anecdotal. Apart from relating general statements made to him by his well driller, neither the intervenor nor any other party introduced expert testimony bearing upon the issues of water supply or sewer adequacy. In considering this issue, the court is mindful that where special exceptions are concerned, one must consider whether the ordinance requirement in question is generalized or specific so as to determine where the burden of persuasion and the duty to go forward with evidence rested. See *Bray v. Zoning Board of Adjustment,* 48 Pa. Commw. 523, 410 A.2d 909 (1980). In the instant case, we perceive that the direction "where applicable, a certificate of adequacy of sewage and water facilities shall be provided" renders this particular criteria sufficiently specific as to place both the burden and the duty upon the appellant as regards sewage, because in Bucks County no sewage system may be constructed or used without authorization from the County

Department of Health. In this respect, the appellant simply failed.

As to the issue of water supply, there being no specific method for determination of adequacy, we perceive that this should be treated as a general condition and thus that the opponents of the application did bear both the duty and the burden to present evidence on this issue. We do not perceive that the Zoning Hearing Board abused its discretion in concluding that the intervenor and other opponents had demonstrated that it was unlikely that appellant could achieve an adequate water supply for the subject premises. As we will discuss with reference to the variance denials, the entire structure of the ordinance itself and the location of this particular property each tend to support the significance attached by the zoning board to the water supply question.

### Variances

Generally, a nonconforming undersized lot must be considered subject to an unnecessary hardship and entitled to dimensional variances which will permit reasonable use of the property. It is rare that a neighboring property or the general public will be so affected by the granting of such dimensional variances as to warrant their denial. In the instant case, the board's rejection of appellant's variance requests would appear to rest upon its determination that appellant had failed to demonstrate that his construction of a single family residence with well and septic disposal systems would not aggravate existing ground water shortages in the neighborhood. In this regard we note that the question of the feasibility and sustainability of the use of lands in the RP District

in light of existing natural resources is the reason for the fairly restrictive dimensional provisions applicable to the subject premises.

Section 304 of the ordinance contains "Statements of Purposes and Intent for the Districts." The subject premises is zoned RP Resource Protection District. As to the Resource Protection District, the ordinance provides:

"The purpose of this district is to protect areas consisting largely of natural features such as forest, steep slopes, scenic areas, wetlands, streams, floodplains, and ponds including those identified in the Bucks County Natural Resources Plan. Intensities are such as to insure that these resources are preserved, while providing for residential development with suitable sewage disposal." Springfield Township Zoning Ordinance, section 304.

The large minimum lot area required (three acres) and low impervious surface ratio (.15) bear testimony to the desire of the township to limit runoff, promote ground water recharge and limit the impact of land development upon fragile and limited natural resources. Apart from the bald assertion that he has as much right to ground water as his "neighbors," appellant did nothing to demonstrate that a well, or for that matter a septic system, on the subject premises would adequately serve the ultimate occupants of the property, or that these installations would not adversely affect existing precariously limited water supplies. Thus, we do not perceive that the board abused its discretion when it concluded that the appellant had not proven that the several variances he requested, including a variance from the impervious surface ratio, would not substantially or permanently impair the ap-

propriate use or development of adjacent property or be detrimental to the public welfare.

While it arose from a somewhat different procedural situation, we note the recent decision of our Commonwealth Court in *In re Cutler Group Inc.*, 880 A.2d 39, 46 (Pa. Commw. 2005). In that case, the court recognized the importance of ground water considerations and the deference to be given to the fact-finder[1] in the determination of such matters. We also note the holding of Judge Garb of this court in *Batco Inc. v. Milford Township Zoning Hearing Board*, 25 Bucks L. Rep. 346 (1974) that adequate water and sewer services are within the realm of health and welfare and are, therefore, matters to be considered by the zoning hearing board in an application for special exception. *Id.*, at p. 354.

While it is not dispositive in this case, we note that the Zoning Hearing Board did err in concluding that the appellant was not entitled to relief because he had purchased the property with knowledge of its nonconformity and for a distress value and thus experienced only an economic hardship.

We recognize the teachings of *Manayunk Neighborhood Council v. Zoning Board of Adjustment of the City of Philadelphia*, 815 A.2d 653, 657 (Pa. Commw. 2002) that generally the transfer of property does not create a

---

1. In *Cutler* the decision in dispute involved a conditional use—essentially a special exception which is decided by the governing body of the municipality. While the approval criterion in question was the adequacy of basins proposed for ground water recharge rather than the feasibility of a well for ground water extraction, we perceive that case to be conceptually similar to the instant matter.

hardship. While in human terms, the appellant's indifference to the potential impact which his development of a dramatically undersized lot will have upon those who reside nearby is made the more irksome by his acquisition of the parcel at a nominal price, nevertheless the circumstances by which he acquired the property cannot be a basis upon which to deny him relief to which he would otherwise have been entitled. In the instant case appellant failed to establish that entitlement.

For the foregoing reasons, we are satisfied that the Zoning Hearing Board of Springfield Township did not err in denying the appellant the special exception and multiple variances he sought in this matter.