# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John T. Juskowich and             :
Nancy Albanese,                   :
            Appellants        :
                              :
            v.                :   No. 536 C.D. 2016
                             :   ARGUED:  November 14, 2016
Washington Township Zoning        :
Hearing Board, Greene County,     :
Pennsylvania                      :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
SENIOR JUDGE LEADBETTER[1]                      **FILED:  May 1, 2017**


        John T. Juskowich and Nancy Albanese (Appellants) appeal from the March 15, 2016, order of the Court of Common Pleas of Greene County (trial court) denying their land use appeal and affirming the decision of the Washington Township Zoning Hearing Board (ZHB) granting the application of EQT Production Company (EQT) for a special exception for gas well drilling and related activities on two properties in Washington Township.  The ZHB attached two conditions to the grant of EQT's application, one relating to traffic control and the other relating to the width of a nearby road, Locust Lane.[2]  We affirm.

---

     [1] This opinion was reassigned to the author on December 13, 2016.

     [2] The ZHB refers to the road in question as Locust Lane.  The trial court and the parties refer to the road as either Locust Road or Locust Drive.  We defer to the title used by the ZHB.

EQT applied for a special exception to operate unconventional well pads on two properties located off Locust Lane in Washington Township. The current zoning of these properties is A-1 (Rural Agricultural District), which permits "extractive operations" as a special exception use. The proposed gas wells meet the definition of "extractive operations" under the Township's Zoning Ordinance (Ordinance). EQT has secured the necessary access agreements and leases for the properties. Appellants are residents of Locust Lane. (Trial court op. at 1-2.)

EQT's 125-page application to the Township included, *inter alia*: a specific application for each parcel on which a well would be located; proof of liability insurance; a Pennsylvania Department of Transportation map showing approximate site locations and access route; a copy of the Erosion and Sedimentation Control General Permit for Earth Disturbance Associated with Oil & Gas Exploration, Production, Processing, or Treatment Operations or Transmission Facilities (ESCGP -2) drawings with a site plan and proposed access road location; a copy of the Well Permit Drilling Application for well 592464, which was submitted to the Pennsylvania Department of Environmental Protection; copies of the plats for the remaining wells; access agreements and leases for the respective sites; and a map showing the property owners within 200 feet of the affected parcel, along with a list of the owners and addresses. *See* Supplemental Reproduced Record (S.R.R.) at 1-125b.

After EQT submitted its application, the ZHB held a public hearing on February 26, 2015. At this hearing, Mark Gordon, the Township's zoning officer, testified that everything seemed to be in order other than public safety concerns regarding the width of Locust Lane, which was not wide enough to accommodate

2

two lanes of traffic with each going in opposite directions. Several residents of Locust Lane, not including Appellants, testified concerning their ability to turn onto Locust Lane from Route 221 and the dangerous condition that would result if traffic is backed up onto Route 221. These residents also raised concerns regarding the ability of emergency responders to reach their homes in the event that Locust Lane was blocked by well traffic.[3] (Trial court op. at 2.) Ultimately, the hearing was continued so that EQT could bring a plan to the Board to address the issues and safety concerns regarding the road access.

The continued hearing was held on May 28, 2015. At this hearing, Todd Klaner, EQT's manager of permitting, testified that EQT would widen Locust Lane to a width of eighteen feet from Route 221 to the well sites and include two travel lanes large enough for trucks, including well trucks and emergency vehicles to pass by one another. Joe Zvara, an employee of EQT, stated that the road width expansion required right-of-way agreements with five residents, all of whom were agreeable, and that EQT was in the process of negotiating the terms of these agreements. Zvara noted that Appellant Juskowich was one of these landowners. Appellant Juskowich, speaking for the first time, voiced his concerns regarding the proximity of the expanded road to his septic system, which was only twenty feet from the road. (Trial court op. at 2-3.) Klaner responded that EQT was in discussions with Juskowich and was willing to accommodate this concern.[4]

At the conclusion of the second hearing, the ZHB voted to approve EQT's application for a special exception with a condition requiring EQT

---

[3] Representatives of EQT also testified at this hearing regarding the nature and scope of EQT's proposed use. (ZHB's Finding of Fact No. 7.)

[4] No issue concerning Juskowich's septic system has been raised in this appeal.

personnel conducting traffic control to give priority to non-EQT vehicles. In a subsequent written decision, the ZHB included a second condition requiring EQT to widen/improve Locust Lane to allow for two-way traffic. (Trial court op. at 3.)

Appellants thereafter filed a land use appeal with the trial court, alleging multiple defects in EQT's application in violation of the Ordinance. However, the trial court concluded that Appellants failed to raise these issues before the ZHB and, hence, they were waived. Instead, the trial court observed that the only issue raised by the residents of Locust Lane, including Appellants, concerned the width of Locust Lane. The trial court noted that these concerns had been alleviated by EQT's decision to widen the road to include two lanes of travel and by the ZHB's imposition of such a condition. (Trial court op. at 6-8.) Hence, the trial court affirmed the ZHB's decision, and this appeal followed.

Initially we note that that "[a] special exception is not an exception to a zoning restriction, but a use that is expressly permitted." *Broussard v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 831 A.2d 764, 769 (Pa. Cmwlth. 2003), *aff'd*, 907 A.2d 494 (Pa. 2006). Recently, this Court reiterated that a "requestor has the burden of persuading the ZHB that the proposed use satisfies the objective requirements of the ordinance." *Dunbar v. Zoning Hearing Bd.*, 144 A.3d 219, 224 (Pa. Cmwlth. 2016) (citing *Bray v. Zoning Bd. of Adjustment*, 410 A.2d 909, 910 (Pa. Cmwlth. 1980)). Once a requestor proves compliance with an ordinance, the burden shifts to the objector to prove that the special exception use would have an adverse effect on the general public that is not normally associated with the proposed use. *Id.*

4

On appeal to this Court,[5] Appellants argue that EQT failed to present substantial evidence establishing compliance with the requirements for a special exception as set forth in the Ordinance.[6] However, at the initial hearing in this

---

[5] Where, as here, common pleas did not take additional evidence, we are limited to reviewing whether the local governing body committed an error of law or made findings which are not supported by substantial evidence. *Whitehall Manor, Inc. v. Planning Comm'n of the City of Allentown*, 79 A.3d 720, 724 (Pa. Cmwlth. 2013); *Gerryville Materials, Inc. v. Planning Comm'n of Lower Milford Twp., Lehigh Cnty.*, 74 A.3d 322, 325 (Pa. Cmwlth. 2013), *appeal denied*, 87 A.3d 817 (Pa. 2014). Substantial evidence is defined as such relevant evidence as a reasonable mind might find adequate to support a conclusion. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983).

[6] Section 601 of the Ordinance provides that a special exception use must meet the following requirements:

> A. That the use is a permitted special exception as set forth in Schedule I hereof.
>
> B. That the use is so designed, located and proposed to be operated that the public health, safety, welfare and convenience will be protected.
>
> C. That the use will be compatible with adjoining development and the proposed character of the zoning district where it is to be located.
>
> D. That adequate landscaping and screening is provided as required herein.
>
> E. That adequate off-street parking and loading is provided and ingress and egress is so designed as to cause minimum interference with traffic on abutting streets.
>
> F. That the use conforms to all applicable regulations governing the district where located, except as may otherwise be determined for large-scale planned developments.
>
> G. That the use will have a minimal effect on township facilities.

**(Footnote continued on next page…)**

5

(continued…)

Section 605.1(E) further addresses extractive operations and extractive industry, requiring an applicant for such use to submit the following to the Township Planning Commission and the ZHB:

(A) A description of the character of the proposed operation, its timing and proposed duration, together with duplicates of maps and plans to be submitted to state and federal regulatory agencies or authorities for the issuance of necessary permits;

(B) Identification of seams of coal, rock, ore, beds of sand and gravel, strata of soil, oil and gas, coal bed methane gas, or other material to be removed in connection with the proposed extractive operation;

(C) An analysis of the possible impact of extractive operations upon ground water supplies in all affected areas of the Township and the measures that will be taken to guarantee that any loss, diminution or pollution of water supply will be corrected;

(D) The location and identity of ownership of all structures and land uses that may be affected by the proposed operation, and the measures that will be taken to protect all structures and land uses from adverse impacts from the proposed extractive operation;

(E) Plans for the restoration or reclamation of all land affected by the extractive operation;

(F) Receipt of a certification from each state or federal agency or authority having enforcement jurisdiction for the issuance of all necessary permits, licenses or grants of authority for the installation and operation of the proposed extractive operation, that the owner or operator seeking the Special Exception Use has fully complied with all requirements for the issuance of such permits, licenses or grants of authority and that such will be granted, together with an undertaking to promptly advise the Zoning Hearing Board within thirty (30) days of any event which would constitute a violation of any requirement for the issuance or continued validity of any such permit, license or grant of authority or any condition thereto;

(Footnote continued on next page…)

matter on February 26, 2015, the Township's zoning officer was asked to provide a brief overview of the matter.  The Zoning Officer discussed EQT's application for well pad using Locust Lane as an access road.  He went on to state as follows, "Now, I reviewed what they have.  Everything seems in order. (Reproduced Record (R.R.) at 12a.)  Shortly thereafter, upon being questioned by the ZHB Chairman as to whether EQT's application meets the requirements of the Township's Ordinance, the Zoning Officer stated that "What I see, it is in order.  There is no problem."  (R.R. at 13a.)[7]  Neither Appellants nor anyone else sought to further question the Zoning Officer with respect to EQT's compliance with the specific Ordinance requirements or to raise the issue of EQT's compliance in any other way, either at this or the subsequent hearing.  Appellants had an opportunity to raise an objection or seek to ask further questions of the Zoning Officer, but they

---

**(continued…)**

> (G) A description of plans for the transportation of materials, products and equipment to be used, removed from, or marketed in connection with the proposed extractive operation including routes of travel, number and weight of vehicles to be used and procedures which will be made to maintain and repair roads that are targeted for use.

The Ordinance also requires an eight-foot fence around the perimeter of the operation, section 605.1(E)(2); completion of the operation within the period of time designated in the permit, section 605.1(E)(5); and deposit of a bond "for each and every mile of Township road or portion thereof proposed to be traversed for removing material from the site," section 605.1(E)(6).  Moreover, section 605.2 sets forth specific performance standards, prohibiting excessive noise, vibration, and odor, as well as air pollution, glare, erosion, and water pollution. *See* Section 605.2a-g.

[7] Appellants contend that these statements by the Zoning Officer did not constitute testimony and, consequently, cannot support the ZHB's decision granting EQT's application.  However, the Zoning Officer's statements followed a general swearing in of all persons planning to speak at the February 26, 2015, hearing, R.R. at 11a, and these statements were made, at least in part, in direct response to questioning from the ZHB Chairman.  Thus, Appellants' contention lacks merit.

7

simply chose not to do so. Therefore, the trial court held that the issue was waived.[8] We agree.

The waiver issue subsumes two discrete questions. First, did Appellants waive the issue of whether EQT's proposal satisfied the specific requirements for a special exception and, second, did Appellants waive the issue as to whether the Zoning Officer's statements amounted to substantial evidence that these criteria were met. As to the first, this Court stated in *Poole v. Zoning Board of Adjustment*, 10 A.3d 381 (Pa. Cmwlth. 2010):

> Objector raised for the first time on appeal to the trial court and on appeal to this Court, the issue of whether the proposed development fails to comply with the formal requirements of a subdivision pursuant to the Philadelphia Zoning Ordinance. However, an issue must be raised before the Board in order to preserve it for appeal. *See* Pa. R.A.P. 1551 (No question shall be heard or considered by the Court which was not raised before the government unit.) By raising this issue for the first time with the trial court on appeal, Objector has waived it.

*Id*. at 384 n.3. Without a doubt, EQT bore the burden of proving that it met the special exception requirements of the Ordinance, but here as in *Poole*, the issue was waived. Moreover, even if we were to say that the burden of showing evidence of compliance with the requirements of a zoning ordinance could not be waived,[9] evidence was, in fact, presented here. By failing to question the knowledge or basis upon which the Zoning Officer opined that these requirements

---

[8] Following Appellants' appeal to this Court, EQT filed a motion to quash alleging that any issues relating to the requirements of the Ordinance were waived, as the trial court so held, because they were not raised before the ZHB. However, by opinion and order dated August 16, 2016, we denied EQT's motion without prejudice to address the waiver issue in its brief.

[9] In this regard, we note that, even if we disagreed with *Poole*, which we do not, we are bound by a prior reported panel opinion of this Court.

8

were met, or in any way challenging his statement before the Board, Appellants plainly waived the issue. Absent some challenge, we believe that the Board was entitled to rely on the advice in this regard of its Zoning Officer, an official charged with responsibility to understand and enforce the Township's zoning ordinance.[10]

Accordingly, we affirm the decision of the Court of Common Pleas.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[10] We certainly believe that the better practice is for an applicant to come forward with specific detailed evidence showing how its proposal meets the standards set forth in the ordinance in question. However, we note that the doctrine of waiver serves the purpose of fundamental fairness and adjudicative efficiency by putting both the litigants and the adjudicator on notice of a claimed error or deficiency at a time when it may still be corrected. Because Appellants waited until the parties were before the trial court, this opportunity was lost.

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John T. Juskowich and    :
Nancy Albanese,    :
        Appellants    :
    :
    v.    :   No. 536 C.D. 2016
    :
Washington Township Zoning    :
Hearing Board, Greene County,    :
Pennsylvania    :

# O R D E R

AND NOW, this 1st day of May, 2017, the order of the Court of Common Pleas of Greene County is hereby AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

John T. Juskowich and          :
Nancy Albanese,              :
          Appellants       :
                        :   No. 536 C.D. 2016
          v.             :
                        :   Argued: November 14, 2016
Washington Township Zoning  :
Hearing Board, Greene County,  :
Pennsylvania             :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

DISSENTING OPINION
BY JUDGE McCULLOUGH                   FILED:  May 1, 2017

       The applicant, EQT Production Company (EQT), did not meet its burden of establishing compliance with the requirements for a special exception as set forth in Washington Township's Zoning Ordinance (Ordinance), and John T. Juskowich and Nancy Albanese (Appellants) did not waive their objections to EQT's application. Therefore, I respectfully dissent.

       As this Court explained in *Morrell v. Zoning Hearing Board of the Borough of Shrewsbury*, 17 A.3d 972 (Pa. Cmwlth. 2011):

> A special exception is a use that is expressly permitted by the zoning ordinance, absent a showing of a detrimental effect on the community. **The applicant for a special exception has the burden to demonstrate that the proposed use satisfies the objective requirements of**

**the ordinance.** Once the applicant has met his or her burden, a presumption arises that the proposed use is consistent with the health, safety, and general welfare of the community. The burden then shifts to the objectors to demonstrate that the proposed use will have a detrimental effect on the health, safety, and general welfare of the community.

*Id.* at 975 (emphasis added).

Such a burden has long been established by this Court. In the seminal case of *Bray v. Zoning Board of Adjustment*, 410 A.2d 909 (Pa. Cmwlth. 1980), we explained that an applicant for a special exception "has both the persuasion burden and the initial evidence presentation duty to show that the proposal complies with the terms of the ordinance which expressly govern such a grant." *Id.* at 910 (citations omitted). In other words, we explained that the applicant "must bring the proposal within the specific requirements expressed in the ordinance for the use . . . sought as a special exception." *Id.* at 911. In *Greaton Properties v. Lower Merion Township*, 796 A.2d 1038 (Pa. Cmwlth. 2002), we similarly explained that an applicant for a proposed special exception use "has both the duty to present evidence and the burden of persuading the board that the proposed use satisfies the objective requirements of the ordinance for the grant of a special exception." *Id.* at 1045-46.

Footnote 6 of the Majority opinion aptly sets forth the Ordinance's extensive requirements that must be met before an applicant can be granted a special exception. (Slip op. at 5-7.) The Majority proceeds to conclude that EQT met its burden through the submission of a 125-page application to Washington Township (Township), the brief testimony of EQT's representatives, and some brief statements by the Township's Zoning Officer at the first hearing before the Township's Zoning Hearing Board (ZHB). At this hearing, the ZHB Chairman

asked the Zoning Officer to provide a brief overview of the matter and he responded that "Now, I reviewed what they have. Everything seems in order." (Reproduced Record (R.R.) at 12a.) Shortly thereafter, upon being questioned by the ZHB Chairman as to whether EQT's application meets the special exception requirements of the Township's Ordinance, the Zoning Officer merely stated that "What I see is in order. There is no problem." (R.R. at 13a.) While representatives of EQT testified before the ZHB, they simply described their general plan for construction of the well pads and the issue regarding the width of the access road, Locust Lane. EQT's representatives did not address the specific requirements of the Ordinance for a special exception.

As discussed above, EQT, as the applicant for a special exception, has both a duty to present evidence and the burden of persuading the ZHB that the proposed use satisfies the objective requirements of the Township's Ordinance. Respectfully, I do not believe that the submission of EQT's application, coupled with the limited testimony of EQT's representatives and the limited statements by the Township's Zoning Officer at the initial ZHB hearing, was a sufficient basis upon which to conclude that EQT met its burden. Indeed, neither the Zoning Officer's statements nor the testimony of EQT's representatives mention the relevant sections of the Township's Ordinance or how EQT satisfied the numerous requirements for a special exception contained therein.

However, the Court of Common Pleas of Greene County (trial court), and now the Majority, go even further to conclude that Appellants' failure to further question the Zoning Officer with respect to EQT's compliance with the specific requirements of the Ordinance, or to otherwise raise an objection at either hearing before the ZHB, amounts to a waiver of any issue in that regard. However,

such conclusion ignores the initial duty and presentation burden on EQT. At the ZHB hearings, EQT failed to present its application or any other evidence as to how it met the Ordinance's requirements for a special exception; hence, there was nothing to which Appellants could object. The trial court and the Majority essentially require Appellants to challenge a statement by the Township's Zoning Officer that the application met these requirements, despite the lack of evidence from the applicant itself, EQT, in support thereof.

Moreover, the Majority's reliance on *Poole v. Zoning Board of Adjustment*, 10 A.3d 381 (Pa. Cmwlth. 2010)**,** in support of waiver is misplaced**,** as the municipal entity in that case concluded that the applicant had presented substantial evidence to meet its initial burden. In *Poole*,[1] the Zoning Board of Adjustment of the City of Philadelphia granted the applicant a use variance, concluding that he met the requirements for the same set forth in the local ordinance. However, the Zoning Board of Adjustment failed to make necessary findings of fact with respect to three other zoning variances requested by the applicant; hence, we remanded to the Zoning Board of Adjustment to make such findings. The waiver question in that case related to an entirely new issue

---

[1] In *Poole*, the applicant proposed a residential development of several lots located within an L-4 Limited Industrial District and a North Delaware Avenue Special Control District. The applicant applied for a use permit from the City of Philadelphia's Department of Licenses and Inspections (L&I) and several variances. L&I denied the application, citing violations of several sections of the local ordinance. On appeal, the Zoning Board of Adjustment held a public hearing and reversed the decision of L&I, concluding that applicant "adequately meet [sic] the criteria" for a use variance. *Id.* at 383. Objector appealed to the common pleas court, which affirmed. In that appeal, objector raised for the first time an issue regarding whether applicant met the requirements for a subdivision under the local ordinance. On appeal to this Court, objector again raised the subdivision issue, as well as an issue regarding three additional variances requested by applicant. We vacated and remanded regarding the variances issue, but held that the subdivision issue was waived because objector failed to raise it before the Zoning Board of Adjustment.

regarding whether the proposed development complied with the formal requirements for a subdivision, which objector first raised on appeal to the common pleas court and this Court. Because this issue was not raised before the Zoning Board of Adjustment, we held that it was waived.

In the present case, while EQT presented a substantial amount of supporting documentation with its application, there remains a question as to the sufficiency of that documentation in relation to the special exception requirements of the Township's Ordinance. The ZHB's decision does not address these requirements or the relevant sections of the Ordinance, nor does it include any findings of fact relating to the same in its decision. Indeed, as noted by Appellants, the ZHB's decision was only one and a half pages long with no citations to the record and no discussion of any of the specific criteria required for granting an extractive industry special exception. Thus, the present case is distinguishable from *Poole*.

For these reasons, I would reverse the trial court's order denying Appellants' land use appeal and affirming the decision of the ZHB granting EQT's application for a special exception.

_____
PATRICIA A. McCULLOUGH, Judge