IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Millcreek Road Associates, LP,          :
                    Appellant           :
                                        :
          v.                            :    No. 1050 C.D. 2020
                                        :    Argued: March 10, 2022
Board of Commissioners of Lower         :
Merion Township                         :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT               FILED:  June 17, 2022


          Millcreek Road Associates, LP (Landowner) appeals an order of the
Court of Common Pleas of Montgomery County (trial court) that affirmed the
decision of the Board of Commissioners of Lower Merion Township to deny
Landowner's conditional use and dimensional relief application.[1]  Landowner seeks
to rehabilitate two historic mill buildings and convert them, along with a new
building, into a condominium complex.   Concluding that the Board of
Commissioners' stated reasons for denying Landowner's application were barred by
collateral estoppel and that its factual findings were not supported by substantial
evidence, we reverse the trial court.

---

[1] THE CODE OF THE TOWNSHIP OF LOWER MERION, CHAPTER 155, ZONING (1927) (Zoning Code),
https://www.lowermerion.org/home/showpublisheddocument/23161/637188241907500000  (last
visited June 16, 2022).  On February 26, 2020, by Township Ordinance No. 4181, the Board of
Commissioners amended Chapter 155 in its entirety.

## Background

Landowner owns a 2.175-acre property (Property) in Lower Merion Township, which is surrounded on three sides by Rolling Hill Park, a 103-acre "natural state" park owned by the Township. The Mill Creek borders the fourth side of the property. The two historic mill buildings are sited on the banks of the Mill Creek, and on the opposite bank lies Mill Creek Road. The Property is located in the Township's RAA Residential District, where the use of land is limited to certain purposes, such as single-family homes, under the Zoning Code. ZONING CODE §155-11. Because of its two historic mill buildings, the Property's use is also governed by the Historic Resource Overlay District, which allows uses otherwise not permitted.[2] ZONING CODE §155-151.

Landowner plans to restore the historic mill buildings and develop them into 13 condominium units. Adjacent to them, Landowner plans to construct a 5-story building (New Building) for 20 more condominium units. The three buildings will form a circle around a courtyard, which is presently used as a parking lot for the abandoned mills. Multi-family residential uses are permitted by conditional use in an Historic Resource Overlay District. ZONING CODE §155-151.B(1)(f). The three buildings will not be physically connected at ground level, but they will be connected by the underground parking garage to be constructed below the courtyard.

Landowner's proposed development has a long regulatory history. On October 19, 2005, the Board of Commissioners issued an adjudication approving Landowner's preliminary land development plan (Preliminary Plan) subject to 46

---

[2] The two historic mill buildings have been designated Class I Historic Resources under the Zoning Code as "resources designated as such pursuant to criteria previously applied or as set forth in Chapter 88 of the [Zoning] Code and which are listed on the Historic Resource Inventory, Chapter A180, together with contributing resources thereto." ZONING CODE §155-4.

conditions, one of which required Landowner to obtain a conditional use approval of its proposed multi-family residential use. On November 16, 2005, the Board of Commissioners granted Landowner's conditional use application. On September 20, 2006, the Board of Commissioners approved an amendment to the Preliminary Plan to add 6 more condominium units, raising the total to 33 units. On December 16, 2009, the Board of Commissioners approved another amendment to the Preliminary Plan that revised the sanitary sewer line and the grading of the Property. With each Plan amendment, the Board of Commissioners confirmed Landowner's conditional multi-family use. On May 16, 2018, the Board of Commissioners confirmed its previously approved conditional use, with the proviso that Landowner file a final land development plan within 12 months.

In February 2019, Landowner filed an application requesting a clarification on how to measure the height of the New Building. A 2005 amendment to the Zoning Code revised the methodology for measuring building height. Specifically, it required a building to be measured from the building's lowest point to its highest point. Previously, the height of a building was measured by using the mean grade of the slope adjacent to a building and the mean high point of the roof.[3] The actual height of the proposed New Building and the number of stories has remained the same from inception. However, because the New Building will be constructed on a steep hill, the change in measurement methodology added 10 feet to its height, *i.e.*, to 54.4 feet. This triggered more restrictive impervious surface,

---

[3] "The height of a single-family detached dwelling or a building accessory thereto shall not exceed three stories in height or 35 feet, and the height of any other building[] may exceed 35 feet in accordance with the provisions of §155-137 [(regarding building height requirements; exceptions)] hereof, but shall not exceed 65 feet." ZONING CODE §155-13.

building area and setback requirements under the dimensional standards in the RAA District.[4]

The Board of Commissioners confirmed that the 2005 Zoning Code amendment applied to Landowner's Preliminary Plan. Because Landowner had not sought relief from the dimensional requirements imposed by the newly calculated height, the Board denied the February 2019 conditional use application and did not act on Landowner's request for extension of the deadline for submitting a final plan. Landowner did not appeal.

On June 12, 2019, Landowner filed a conditional use application seeking relief from the RAA District dimensional requirements, which was supported by the Township's Historical Commission. The Historical Commission recommended that the Board of Commissioners approve a reduction of "front, side and rear yard setbacks" and "building area, impervious surface, and building height"[5] requirements in the RAA Zoning District. R.R. 154a. On the other hand, the Township's Planning Commission recommended disapproval of the conditional use application for the stated reason that the Zoning Code's authorized expansion to a historic resource did not contemplate the construction of a separate building, such as the New Building.

Hearings were conducted on September 23, October 24, and October 31, 2019, by a Township hearing officer. The Township presented one witness and

---

[4] The RAA District permits the construction of a building 65 feet in height. However, for each foot of building height above 35 feet, the setback, building area and impervious surface requirements become more restrictive. *See* ZONING CODE §155-137(A).

[5] The minutes of the Historical Commission reported that a consultant had stated that "the height of the [N]ew [B]uilding might not be perceived fully from the road but would dwarf the historic resources." Reproduced Record at 652a (R.R. __).

4

several documents; Landowner presented numerous witnesses and extensive documentary evidence.

On behalf of the Township, Donna Heller, the Township's Director of Parks and Recreation, testified. She was not offered or accepted as an expert witness. She stated that the New Building's location next to the Rolling Hill Park "would change the experience of [the] [p]ark. It's currently an open, natural space with no sight obstructions to nature." Notes of Testimony (N.T.), 10/24/2019, at 13; R.R. 362a. Heller believed the New Building would adversely impact the park experience of its users. The Township presented no other witnesses.

Landowner presented Charles Jefferson, an expert in adaptive reuse of historic properties. He testified that the mill buildings were in "poor condition," noting that mortar in both buildings had failed, and there were signs of timber rot. N.T., 9/23/2019, at 75; R.R. 245a. Further, he observed that a steel truss that runs from one end of the larger mill building to the other had dropped, which indicated a foundation issue. Nevertheless, Jefferson opined that the mill buildings could be reused. He estimated the cost of stabilizing and restoring the two mill buildings at $4.1 million. Jefferson explained that the New Building is needed to make the rehabilitation and reuse of the two mill buildings economically feasible.

Robert Wise, an expert in historic architecture and preservation, also testified for Landowner. Wise described the historical significance of the mill buildings and acknowledged that some of their architectural features cannot be retained. Nevertheless, Wise opined that Landowner's proposed development would preserve the important architectural characteristics of the mill buildings. Wise acknowledged that there are no five-story buildings in the Mill Creek Historic District and agreed that the New Building will be visible from the adjacent park.

However, Wise described the current view as a "derelict historic site" covered with "graffiti." N.T., 10/24/2019, at 97; R.R. 332a.

Michael Bowker, a licensed engineer, who has been involved since 2002 with Landowner's proposal, testified about the development's overall design and its regulatory history. Lisa Thomas, an expert in historic preservation, testified about the landscaping plan she prepared for the proposed development. Frank Tavani, a professional traffic operations engineer, testified about the proposal's off-site traffic impacts. Finally, Michael Samuels testified about the valuation of Landowner's proposed development and why alternative designs, with fewer residential units, were not economically feasible.

Landowner also introduced the report of Frederick Baumert, a professional engineer, who did "a structural condition assessment[.]" R.R. 478a-87a. He reported that the mill buildings are seriously decayed and at risk of collapse. This report was done on behalf of a third party, not for Landowner.

At the conclusion of the hearings, several residents commented. Kathleen Abplanalp, of the Lower Merion Conservancy and a Township resident, testified that the Conservancy did not support Landowner's application. Abplanalp stated that she recently walked through the site and was shocked by the "state of decline" of the mill buildings over the last 15 years. N.T., 10/31/2019, at 77; R.R. 380a. She explained that the Conservancy previously supported the proposed development, but the engineer's report about the current condition of one of the mill buildings had caused the Conservancy to withdraw its support.

On December 6, 2019, the hearing officer recommended that the Board of Commissioners deny Landowner's application. The hearing officer concluded that Landowner had not complied with the terms of the Zoning Code's provisions

6

for uses in the Historic Resource Overlay District. The hearing officer reasoned as follows.

First, the Zoning Code allows one principal building on a lot in the RAA District. ZONING CODE §155-4 ("Lot" is defined as "[a] parcel of land which is occupied or intended to be occupied by one principal building"). The two mill buildings are lawful non-conforming uses, but the New Building would be a third principal building. This violated the Zoning Code. ZONING CODE §§155-4, 155-151.B(1)(f)[2]. The Zoning Code allows for conversion of a Class I Historic Resource but not for the construction of a separate building. Stated otherwise, the New Building was not a use allowed at any height or size.

Second, Landowner's New Building did not meet the 250-foot setback requirement from another permitted "use." ZONING CODE §155-151.B(1)(f). The hearing officer reasoned that Rolling Hill Park is a permitted "use," and it is located five feet from the existing mill buildings.

Third, Landowner did not demonstrate a basis for relief from the dimensional requirements of the Zoning Code. Specifically, Landowner did not prove that dimensional relief was essential to the preservation and reuse of the mill buildings. Further, it was not feasible to preserve the larger mill building, which had to be demolished for the sake of public safety. The hearing officer did not credit the opinion of Landowner's expert that this larger mill building could be reconstructed without affecting the exterior façade.

Finally, the doctrine of collateral estoppel did not bar the denial of the conditional use approval for the New Building. The hearing officer explained:

> Previous applications for conditional use approval represented the New Building to be code compliant with 35 feet or four stories in height. Each time [Landowner] revealed an increase in the height of the proposed building, in April 2019 (44.41-ft) and

7

June 2019 (54.4-ft), the [Landowner's] engineer has testified the increase was due to a change in Lower Merion's definition of building height in 2005. These material changes in the height of the New Building in 2019 are not satisfactorily explained by a change in the [Zoning] Code's definition of building height in 2005. Previous conditional use approvals would not have been granted if the actual 55.4-ft height of the New Building was known. There was not a full and fair opportunity to litigate the issue in previous conditional use applications because the actual 55.4-ft building height was not provided by the [Landowner]. It would be inequitable to collaterally estop the Township when new issues are raised for the first time in this application.

Hearing Officer Proposed Adjudication at 62-63, Conclusion of Law No. 123; R.R. 710a-11a.

After receiving the hearing officer's recommended adjudication, Landowner submitted an affidavit from Baumert. It stated that Baumert revisited the site on December 9, 2019, and reported that Landowner had stayed further deterioration of the mill buildings. A temporary roof was installed on the smaller mill building, and the steel beam in the larger mill building had been shored up and stabilized. This allayed Baumert's concerns about the larger mill building's stability.

On February 19, 2020, the Board of Commissioners adopted the hearing officer's proposed recommendation and denied Landowner's multi-family conditional use and dimensional relief application. It declared the Preliminary Plan to be null and void, which mooted Landowner's request for an extension of time to file a final plan.

Landowner filed a land use appeal with the trial court. On August 20, 2020, the parties presented oral argument before the trial court. Thereafter, on September 16, 2020, the trial court denied Landowner's land use appeal. After Landowner appealed to this Court, the trial court issued an order directing

8

Landowner to file a concise statement of errors complained of on appeal pursuant to PA. R.A.P. 1925(b). The trial court then issued its PA. R.A.P. 1925(a) Opinion, addressing each of Landowner's issues.

First, the trial court held that the prior proceedings before the Board of Commissioners did not trigger the doctrine of collateral estoppel because the height of the New Building and the advanced deterioration of the mill buildings were facts not considered in the prior proceedings. Therefore, the Board was not barred from raising, for the first time, the issue of whether the Zoning Code allowed the construction of the New Building as part of a rehabilitation of a historic resource.

Second, the trial court rejected Landowner's argument that the New Building was an expansion of the existing mill buildings that could be built for a multi-family residential use. The trial court rejected the notion that the connection of the mill buildings to the New Building by an underground parking garage made any difference to this analysis. Further, the expansion of the historic resource could not be done because it would be located five feet from Rolling Hill Park, a separate permitted "use." Even assuming the New Building constituted a permitted "expansion," it still had to be located 250 feet from Rolling Hill Park.

Third, the trial court rejected Landowner's argument that the evidence did not support the Board of Commissioners' finding that the historic mill building had to be demolished. The trial court explained that Baumert stated that the larger mill building was seriously deteriorated. Although he clarified in his affidavit that this mill building had been stabilized and did not require demolition, the Board based its finding on "the totality of the circumstances with respect to the condition and proposed restoration of the two mill buildings and the impact of the New Building on the surrounding environment." Trial Court 1925(a) Op. at 22. Stated otherwise, the trial court did not believe the case turned on whether the mill buildings could be

9

saved. In any case, evidence of deterioration since 2004 was also documented in a June 19, 2019, Historic Resource Impact Study. Viewing the evidence most favorably to the Township, the trial court held that substantial evidence supported the Board of Commissioners' finding of fact that the mill buildings could not be saved.

Finally, on the denial of dimensional relief, the trial court found no error. The New Building was not a historic resource and, thus, Landowner needed a variance from the Zoning Hearing Board to obtain relief from the building area, impervious surface and setback requirements for the New Building.

Landowner appealed to this Court.

## Appeal

On appeal,[6] Landowner raises seven issues.[7] First, it argues that the Board of Commissioners was collaterally estopped from reversing its prior adjudication that the New Building was an authorized expansion of a historic resource. Second, it argues that the Board of Commissioners erred in holding that the nearest permitted use to Landowner's proposed condominium use was less than 250 feet away. Third, it argues that the Board of Commissioners lacked substantial evidence for its factual finding that one of the mill buildings had to be demolished. Fourth, it argues that the Board of Commissioners erred and abused its discretion by

---

[6] Where the trial court did not take additional evidence, this Court's review determines whether the local governing body committed an error of law or abused its discretion. *Marshall v. East Bradford Township Board of Supervisors*, 250 A.3d 481, 487 n.5 (Pa. Cmwlth. 2021). A local governing body abuses its discretion when its findings are not supported by substantial evidence. *Id.* Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* Where an appeal presents issues of law, including statutory interpretation, this Court's scope of review is plenary, and our standard of review is *de novo*. *Id.*

[7] For purposes of this opinion, we have reorganized Landowner's issues on appeal.

basing factual findings on unsworn public statements. Fifth, it argues that the Board of Commissioners erred in holding that Landowner did not submit sufficient details of its planned historic rehabilitation and compliance with all standards applicable thereto. Sixth, it argues that the Board of Commissioners erred by denying its application on the basis of purported noncompliance with subjective, vague, and inapplicable provisions of the Zoning Code. Seventh, it argues the Board of Commissioners erred and abused its discretion in declaring the Preliminary Plan void and, on that basis, not extending the 12-month deadline for submission of a final land development plan.

**Analysis**

"A conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal governing body rather than the zoning hearing board." *Williams Holding Group, LLC v. Board of Supervisors of West Hanover Township*, 101 A.3d 1202, 1212 (Pa. Cmwlth. 2014) (quoting *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006)). A conditional use, like a special exception, is not an exception to the municipality's zoning ordinance, but rather a use to which an applicant is entitled as a matter of right unless the municipal legislative body determines "that the use does not satisfy the specific, objective criteria in the zoning ordinance for that conditional use." *In re Drumore Crossings, L.P.*, 984 A.2d 589, 595 (Pa. Cmwlth. 2009). It is the applicant's burden to establish that the proposed use satisfies the specific criteria in the particular zoning ordinance. *Williams Holding Group*, 101 A.3d at 1212. "An applicant who satisfies this prima facie burden is entitled to approval, unless objectors in the proceeding offer credible and sufficient evidence indicating that the proposed use would have a detrimental impact on public health, safety, and welfare." *Id.*

11

In its first and second issues, Landowner argues that the trial court erred in holding that the Board of Commissioners was not collaterally estopped by its prior adjudications from applying the Zoning Code in new and different ways so as to preclude the New Building. The actual size and height of the New Building has not changed and neither have the Zoning Code's provisions on permitted uses in the Historic Resource Overlay District. Simply, the dimensional requirements for the RAA District triggered by the new measurement of the New Building and the present condition of the mill buildings have no bearing on whether the New Building is a permitted use. Even so, the New Building is allowed in the Historic Resource Overlay District because the Zoning Code allows Landowner to expand the building area on the property by up to 50%.

We begin with a review of the relevant provision of the Zoning Code. Section §155-151.B(1)(f) states as follows:

> The following uses and no other shall be permitted in the Historic Resource Overlay District:
>
> * * *
>
> B. Uses permitted on properties designated as Class I Historic Resource:
>
>> (1) Provided that the guarantee referenced in §155-153B(4) has first been submitted and approved, a *property* upon which a Class I Historic Resource is situated, excluding buildings and structures which do not contribute to the historic resource . . . *may,* . . . *be used for any one of the following uses*, subject to obtaining a recommendation from either the Board of Historical Architectural Review or the Historical Commission, pursuant to Chapter 88, and *obtaining conditional use and approval from the Board of Commissioners*:
>
> * * *

12

(f)  *A Class I building* in a residential zoning district presently being put to a nonconforming, nonresidential use *may be converted to a multifamily use, provided each dwelling unit shall have no fewer than 1,250 square feet* of occupied area.

[1]  *The area within the perimeter of the building measured at grade level may be expanded by up to 25% in conjunction with a conversion to a multifamily* use, provided there exists between the multifamily use and the nearest adjacent permitted use at least 250 feet.

[2]  *The area within the perimeter of the building measured at grade level may be expanded by up to 50% in conjunction with a conversion* to a multifamily use, provided there exists between the multifamily use and the nearest adjacent permitted use at least 500 feet.

ZONING CODE §155-151.B(1)(f) (emphasis added).[8]  In short, depending on the location of the "nearest adjacent permitted use," the area of the Class I building may

---

[8] Section 155-153.B(4) explains that a means to guarantee the permanent protection of the historical integrity of the resource, such as the establishment of a conservation easement or appropriate covenants, shall be provided to the landowner.  ZONING CODE §155-153.B(4).  There

13

be increased by 25% (where the nearest permitted use is 250 feet away) or 50% (where the nearest permitted use is 500 feet away).

Landowner explains that the "area within the perimeter of the building" refers to the total square footage of the existing buildings. ZONING CODE §155-151.B(1)(f)[1]. Landowner is allowed a 50% expansion because the nearest permitted use is more than 500 feet away. Because building area will be expanded in conjunction with the conversion of the historic mill building, the expansion may also be used for multi-family use. Landowner further explains Section 155-151.B(1)(f)[2] of the Zoning Code does not limit the building area expansion to a structure physically attached to the existing Class I Historic Resource.

The Board of Commissioners concluded that Rolling Hill Park is a permitted use, and it is located less than 250 feet from the Property. In four prior approvals, however, the Township conceded that the nearest adjacent permitted use was more than 500 feet away. Likewise, the Township agreed that the New Building was a permissible expansion of the historic mill buildings. Landowner argues that both these conclusions were essential to the prior adjudications of the Board of Commissioners to grant the conditional use and, thus, subject to the doctrine of collateral estoppel.

We agree. The Township was collaterally estopped from taking the position that the nearest permitted use is less than 250 feet away or that the New Building was not a valid expansion of the building area of an historic resource. The Board of Commissioners was likewise precluded from so holding.

In any case, neither Township position is valid. The Zoning Code permits the "area within the perimeter of the building" to be expanded "by up to 50%

is no question that Landowner has the guarantee and has secured the recommendation of the Township's Historical Commission.

14

in conjunction with a conversion to a multifamily use." ZONING CODE §155-151.B(1)(f)[2]. The "area within the perimeter of the building" refers to the total square footage of the Class I Historic Resource, *i.e.*, the existing building area. Because expansion of the building area attributed to the historic resource occurs "in conjunction with" the conversion to multi-family use, the additional building area may also be used for multi-family use. *Id*.

Section 155-151.B(1)(f)[2] does not limit the allowed expansion to a structure physically attached to the Class I Historic Resource. It is more flexible. This is consistent with the Historic Resource Overlay District, which was established to protect and retain the historical integrity of historic resources. ZONING CODE §155-149.A, F.[9] By placing the expansion in a separate building to the rear of the mill buildings, Landowner will preserve the historical integrity of the mills. Further, Section 155-151.B(1)(f)[2] authorizes the expansion of the building area on the Property up to 50% because the nearest adjacent permitted use is at least 500 feet away.

---

[9] It states:

> It is hereby declared as a matter of public policy that the preservation and protection of buildings, structures and sites of historic, architectural, cultural, archaeological, educational and aesthetic merit are public necessities and are in the interests of the health, prosperity and welfare of the people of Lower Merion Township. To that end, a separate zoning district is hereby created to overlay all other zoning districts in the Township. The provisions of this article, coupled with the provisions of Chapter 88, are intended to:
>
> > A. Promote the general welfare by protecting the integrity of the historic resources of Lower Merion Township.
> >
> > * * *
> >
> > F. Promote retention of historical integrity in the context of proposed land use and/or structural changes.

ZONING CODE §155-149.A, F.

Rolling Hill Park is a Township public park. A municipal use includes public parks; administrative offices; equipment or material storage; public sewage and/or water, collection, treatment, storage, transmission and/or distribution facilities; stormwater management facilities; public parking facilities; public libraries or other similar uses owned or operated by the Township. ZONING CODE §155-4. However, the RAA District permits a "[m]unicipal building and municipal use," which is more restrictive than the general "municipal use." ZONING CODE §155-11.H. There is no municipal building being used for municipal purposes within 500 feet of the property. To read the phrase "municipal building and municipal use" as synonymous with "municipal use" would mean, for example, that a Township stormwater basin less than 250 feet away would prohibit any expansion of a Class I historic resource. The inclusion of "municipal building" with "municipal use" was intended to address density concerns that would occur, for example, by placing a multifamily use next to a township office building. In short, there is no permitted use within 500 feet of the multi-family use, as the Township correctly maintained in every prior proceeding on Landowner's conditional use application.

Under the Zoning Code, Landowner is permitted to add the New Building as part of the proposed expansion of the building area of the Property by up to 50%. The Board of Commissioners erred as a matter of law when it determined that the New Building did not comply with Section 155-151.B(1)(f)[2] of the Zoning Code.

In its third issue, Landowner argues that the Board of Commissioners' factual finding that the larger mill building was "unsalvageable and must be demolished for safety reasons" is not supported by substantial evidence. Landowner Brief at 17. The Board of Commissioners relied on Baumert's structural report, which provided a snapshot of the condition of the mill buildings on the date of their

16

inspection. Baumert's report was prepared to advise "a prospective buyer of the current state" of the mill buildings. *Id*. (quoting R.R. 478a). Baumert was not engaged to evaluate the circumstances under which the mill buildings could be rehabilitated or preserved.

The trial court reasoned that the Board of Commissioners did not rely exclusively on Baumert's report but looked at the totality of the circumstances. Landowner argues that the uncontroverted evidence shows that the mill buildings can be restored, which evidence the Board of Commissioners simply ignored. Lest there be any doubt, Baumert submitted an affidavit clarifying that his report "makes no evaluation or conclusion about whether it is technically feasible to adaptively reuse the [m]ill [b]uildings." Landowner Brief at 18 (quoting R.R. 720a).

We agree with Landowner that considering the totality of circumstances required a review only of substantial evidence. The record lacks any substantial evidence to support a finding that one of the mill buildings cannot be saved.

Further, the Board of Commissioners erred in using its own out-of-context characterization of statements in a lengthy document, Landowner's Historic Resource Impact Study, to support a finding of fact. That study identified specific problems with the historic resource, but its conclusion was clear that the mill buildings can be restored and reused. In any case, the fact that Landowner's expert highlighted the urgency of the rehabilitation supports the finding that preservation is attainable. Likewise, the Board of Commissioners ignored the testimony of Landowner's expert, Charles Jefferson, that the mill buildings could be rehabilitated and reused.

In its fourth issue, Landowner argues that the Board of Commissioners erred in basing its factual findings on unsworn or irrelevant testimony. Abplanalp's

17

comments about the Property's current condition and the height of the New Building are not evidence. These statements are nothing more than her personal understanding of how the proposed development would be received by park visitors. Landowner contends that an unsupported lay opinion does not constitute substantial evidence and cannot defeat expert opinion evidence. Landowner further contends that the Township's sole witness, Heller, worked for the Township in its parks department and lacked any experience or expertise in the Historic Resource Overlay District or the conservation of historic buildings and landscapes. We agree.

The trial court erred in characterizing Heller's testimony as providing the Board of Commissioners a factual basis for rejecting the recommendation of the Township's Historical Commission or the testimony of Landowner's expert witness. Further, Heller's opinion that the "habits" of users of Rolling Hill Park would be adversely impacted by Landowner's proposed development lacked any foundation. Heller did not conduct a survey of park users.

In its fifth issue, Landowner argues that the Board of Commissioners erred in holding that Landowner did not submit sufficient details of its planned historic rehabilitation. With respect to the larger of the two mill buildings, Landowner's rehabilitation plan explained: (1) the wall material will be cleaned and repaired, using materials that match the original materials; (2) new windows will be matched and finished to resemble the original windows; (3) the roof will be replaced and finished to match an original appearance; and (4) the brick chimney will be salvaged and repointed, if feasible. The Historic Resource Impact Study explained that features later added to the mill building will be rehabilitated or replaced with matching materials. With respect to the smaller mill building, Landowner's rehabilitation plan explained: (1) walls and windows would either be restored or replaced and matched with the original features; (2) the roof would be replaced and

18

match the historic color palette of the previous roof; and (3) the bridge connection between the two mill buildings would be reconstructed with matching materials. A report prepared by Noble Preservation Services fully analyzed the historical exterior finishes and masonry materials of both buildings and determined which materials could be effectively restored and, for those materials that could not, identified materials that would best approximate the original. Both the Noble report and the Historic Resource Impact Study were admitted into evidence.

The Historical Commission recommended approval of the conditional use and dimensional relief application, as it had on four prior occasions. Robert Wise, Landowner's expert in historic preservation, agreed with the recommendations of the Historical Commission. In his testimony, Wise discussed the plan to rehabilitate the exterior of the buildings with, for example, new windows finished to match the historic color, among other details.

Nevertheless, the Board of Commissioners concluded that the final design of the mill building façades remained "an open question." R.R. 130a. This was erroneous, given the copious evidence on rehabilitation, but it is not relevant to the conditional use application. Landowner was not required to provide "particular details of the design of the proposed development," because conditional use proceedings "involve only the proposed use of the land." *Thompson*, 896 A.2d at 670. Detailed design information, such as a floor plan, "even if required by the ordinance, is not relevant to the consideration of a special exception or conditional [use] application," but is addressed in later stages of the land development process. *Id*. at 671. Indeed, further "refinements" to a rehabilitation plan are entirely appropriate as the project proceeds. The Historical Commission has authority to review and make comments on land development plans in these later stages of the

19

land development process.[10]  Indeed, the Historical Commission can *require* future "refinements" to the architectural details.  The trial court erred in upholding the Board of Commissioners' rationale that the rehabilitation of the mill buildings was "an open question."  R.R. 130a.

In its sixth issue, Landowner argues that the Board of Commissioners erred in citing Zoning Code provisions that were general, vague or subjective, and not relevant to a conditional use.  The Board asserted that Landowner had to demonstrate that its proposal will not jeopardize the preservation of the Class I Historic Resource due to "the exterior changes to be made or the exterior character of the structure to be erected" or the "appropriateness of exterior architectural features of structures involved with the proposed work."  Landowner Brief at 36-37. The Board also claimed Landowner did not demonstrate that "the historical integrity of the resource has been provided through the design of the building improvements" and "all other land development features."  *Id*. at 37-38.  Landowner contends that at this stage it is required only to demonstrate that its conditional use "will not be destructive of the integrity of the historic resource or detrimentally affect the value of surrounding properties."  *Id*. at 38.  We agree.

Courts "have observed that '[s]pecificity is the essential characteristic of operative [conditional use] requirements in an ordinance.'"  *Williams Holding Group*, 101 A.3d at 1212 (quoting *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 911 (Pa. Cmwlth. 1980)).[11]  Accordingly, general, non-specific, or non-

---

[10] TOWNSHIP SUBDIVISION AND LAND DEVELOPMENT ORDINANCE (SALDO) §135-7.C(1); R.R. 154a.

[11] The Court in *Williams Holding Group* cited case law which dealt with special exceptions, noting that "[i]n recognition of the similarity between special exceptions and conditional uses, courts apply the same standards of proof to both types of applications."  *Williams Holding Group*, 101

objective requirements are not "part of the threshold persuasion burden and presentation duty of the applicant" seeking approval of a conditional use. *Williams Holding Group*, 101 A.3d at 1212 (quoting *Bray*, 410 A.2d at 911).[12] The focus is on the specific criteria relevant to a conditional use because it is unfair to require a landowner to conform to a general "policy statement." *Appeal of George Baker*, 339 A.2d 131, 135 (Pa. Cmwlth. 1975). A subjective or vague requirement "may be either one that may not be enforced or one for which an applicant bears no initial evidentiary burden." *Williams Holding Group*, 101 A.3d at 1213.

The Board of Commissioners impermissibly required Landowner to demonstrate compliance with both vague and subjective standards and standards more appropriately applied in the land development approval process.

The Board of Commissioners concluded that Landowner did not provide "complete" information about the restoration and landscaping for the historic mill buildings and merely committed to working with the Historical Commission. First, this conclusion is at odds with Landowner's extensive and detailed evidence on these features of its development plan. In any case, an application for a conditional use is not the proceeding for working out the technical details of building design and construction. Indeed, Landowner is required to work

---

A.3d at 1212; *See also Thompson*, 896 A.2d at 670 ("Because the law regarding conditional uses and special exceptions is virtually identical, the burden of proof standards are the same for both.").

[12] The Court in *Bray* cited the decision in *Cherbel Realty Corporation v. Zoning Hearing Board*, 285 A.2d 905 (Pa. Cmwlth. 1972), which held that where an ordinance purported to place upon the applicant the burden to prove that the special exception would be "in harmony with the general purpose(s) and intent" of the zoning ordinance, the language was

> so vague that the lower court was correct in concluding that the applicant's only burden was to prove that its request for special exception conformed to the requirements of the ordinance and that the opposition to the exception must carry the burden of proving that the proposed use would be contrary to the public interest.

*Bray*, 410 A.2d at 912 (quoting *Cherbel Realty Corporation*, 285 A.2d at 906).

21

with the Historical Commission on design details in the land development approval process. SALDO §135-7.C(1). Second, the standards in the Zoning Code cited by the Board are open to interpretation and cannot be applied to a conditional use application. These include "all other land development features," ZONING CODE §155-153.B(5); "value of surrounding properties," *i.e.*, Rolling Hill Park, ZONING CODE §155-153.B(6); "community development objectives," ZONING CODE §155-141.2.B(1); and "all other elements of proper land planning," ZONING CODE §155-141.2.B(5). All these provisions are open to interpretation and cannot be applied predictably and objectively to a conditional use application. Third, the Board's stated basis for concluding that Landowner's evidence was inadequate was based on its factual finding that one of the mill buildings must be torn down. As shown, however, there is no substantial evidence to support this factual finding. In sum, the Board erred.

In its final issue, Landowner argues that it was entitled to conditional use relief from the underlying bulk, area, and setback requirements because the Zoning Code permits the requested relief where essential to preservation of the historic resource. Section 155-152.C of the Zoning Code states as follows:

> Bulk, Area and Setback requirements.
>
> Provided that the guarantee referenced in §155-153B(4) has first been submitted and approved, the requirements applicable to the underlying zoning district relating to *building area, impervious surface and front, side and rear yard setbacks may be modified by up to 15% with respect to Class I and Class II Historic Resources, subject to obtaining a recommendation* from either the Historical Commission or the Board of Historical Architectural Review, pursuant to Chapter 88, and to obtaining conditional use approval from the Board of Commissioners. These modifications shall apply to the area of the lot as it existed on March 15, 2000.

22

* * *

      C.   Where the requested relief is determined by the Board of Commissioners to be essential to the preservation of the historic resource because without such relief it would not be physically or economically possible to maintain the historic resource, *the Board of Commissioners may, by conditional use, reduce such requirements to a greater degree than permitted by this section to protect the historic resource.*

ZONING CODE §155-152.C (emphasis added). Stated otherwise, the dimensional requirements in the RAA District may be modified by up to 15% for historic resources, and greater relief can be granted where "essential to the preservation of the historic resource[.]" *Id.* Landowner's uncontroverted evidence demonstrated that it would not be physically or economically possible to reuse the historic resources without the inclusion of the New Building in that reuse.

Before the trial court, the Board of Commissioners argued that the New Building is not a "historic resource," and therefore, not entitled to any dimensional relief. However, the "preservation of the historic resource" requires the addition of the New Building as the only economically feasible way to incur the expense of rehabilitating the historic mill buildings. ZONING CODE §155-152.C. The Board of Commissioners erred. In any case, because this claim was not raised in the Board's adjudication, it is waived.

**Conclusion**

The Board of Commissioners erred in denying Landowner's conditional use and dimensional relief application under Section 155-151.B(1)(f)[2] of the Zoning Code. Specifically, the Board erred and abused its discretion by taking legal positions barred by the doctrine of collateral estoppel, by applying provisions of the Zoning Code and SALDO not relevant to a conditional use application and by

23

making factual findings not supported by substantial evidence. The Board likewise erred and abused its discretion by declaring the Preliminary Plan null and void and on that basis denying an extension of time for the recording of Landowner's final land development plan. Finally, the Board erred in denying Landowner's request for an extension of time to file a final plan as moot for the stated reason that Landowner's Preliminary Plan had been declared null and void.

For these reasons, the trial court's order affirming the Board of Commissioner's adjudication is reversed. The Court remands this matter to the trial court with directions to remand to the Board of Commissioners to grant Landowner's conditional use application and to approve Landowner's request for a one-year extension to file a final land development plan.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Millcreek Road Associates, LP,　　　　:
　　　　　　　Appellant　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　: No. 1050 C.D. 2020
　　　　　　　　　　　　　　　　　:
Board of Commissioners of Lower　　:
Merion Township　　　　　　　　　:

# **O R D E R**

AND NOW this 17th day of June, 2022, the September 16, 2020, order of the Court of Common Pleas of Montgomery County affirming the February 19, 2020, order of the Board of Commissioners of Lower Merion Township is REVERSED. The Court remands this matter to the Court of Common Pleas with instructions that it remand the case to the Board of Commissioners of Lower Merion Township to grant Millcreek Road Associates, LP's conditional use application and to approve a one-year extension of the deadline for Millcreek Road Associates, LP to submit a final land development plan.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita