# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Trustees of the Dorrance Hamilton :
3/15/1996 Revocable Agreement of :
Trust, :
                 Appellant :
                               :
             v. : No. 1279 C.D. 2022
                               : Argued: December 4, 2023
Radnor Township Board :
of Commissioners :

**BEFORE:**     **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                     **HONORABLE STACY WALLACE,** Judge
                     **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: June 14, 2024**

The Trustees of the Dorrance Hamilton 3/15/1996 Revocable Agreement of Trust (Applicant) appeal from the October 31, 2022 Order of the Court of Common Pleas of Delaware County (common pleas) affirming the Radnor Township Board of Commissioners' (Board) denial of its conditional use application (Application). At issue in this case is whether the Board erred in denying the Application due, in large part, to the presence of an underground stormwater management system beneath the proposed common open space. After careful review, we affirm.

## I.    BACKGROUND

Radnor Township's zoning ordinance (Ordinance)[1] allows, by conditional use approval, a Density Modification Development (DMD) in, *inter alia*, its R-4 zoning district (R-4) on tracts of at least five acres.  Ordinance § 280-29(B)(1), § 280-92(B)(4).[2]  Applicant owns four contiguous parcels with addresses of 208 and 228 Strafford Avenue and 18 Forrest Lane in Radnor Township (Township), Delaware County (Property).  (Board Adjudication, Finding of Fact (FOF) ¶ 2.)  The Property, located in R-4, totals 7.754 acres, or 337,764 square feet.  (*Id.* ¶¶ 5, 16.)  Applicant filed its Application on September 24, 2020, seeking conditional use approval to develop the Property pursuant to the Township's DMD provisions.  (Reproduced Record (R.R.) at 7a, 16a.)  As part of its Application, it submitted a plan to develop a community of 41 townhomes on the Property (Plan), which would include common open space, improvements, and an underground stormwater management system (System).  (FOF ¶ 15; R.R. at 9a.)

The Board held four hearings on the Application in December 2020 through March 2021.  (Board's Adjudication at 1.)[3]  Twenty-four community members were granted party status, six over the objection of Applicant.  (*Id.* at 1-2.)  Applicant first called Robert Lambert, an expert in civil engineering, who had, along with Bernard Panzak, a landscape architect, prepared the Plan.  Mr. Lambert testified about the Plan's compliance with the conditional use requirements and the details of the Plan.  (FOF ¶¶ 12, 13; R.R. at 279a-94a.)  Specifically, he "testified that the stormwater plan would comply [with the Stormwater Management Ordinance] and that the existing conditions would be improved."  (Board's Adjudication at 11.)  The Plan

---

[1] RADNOR TWP., PA. ZONING ORDINANCE NO. 1564 (1974), *as amended*.

[2] Record Item 39.

[3] (R.R. at 1045a-58a.)

proposed 53,685 square feet of common open space. (FOF ¶ 17.)[4] There would be six areas of common open space, specifically five small tracts and one large tract. (*Id.* ¶¶ 32-37.) Further, the Plan would include the System, which would "accumulate and infiltrate stormwater." (*Id.* ¶ 38; R.R. at 274a.) Part of the System would be constructed beneath three of the designated common open space areas. (FOF ¶ 42.) Mr. Panzak testified generally about the landscaping and lighting plan and its compliance with the Ordinance's DMD requirements. (*Id.* ¶¶ 44-49.) Applicant also called Frank Tavani, an expert in traffic engineering, who testified about the Plan's expected traffic impact. (*Id.* ¶¶ 50-55.) Applicant's final witness, Erik Hetzel, testified about the anticipated fiscal impact of the Plan. (*Id.* ¶ 60.)

The Board specifically referenced two parties, Gregory Szary and Mark Gaeto, who offered evidence. Mr. Szary "testified to his observation of stormwater . . . [on] Forrest Lane[,]" a street just south of the Property. (*Id.* ¶ 61; R.R. at 42a.) Mr. Gaeto offered his own traffic engineering expert, Joseph Fiocco, who "opined that the Tavani study was deficient in its methodology." (FOF ¶¶ 62-63.) Finally, at the conclusion of the hearings, "[v]arious resident parties testified and/or provided evidence establishing existing problems with stormwater in the area surrounding the Property." (*Id.* ¶ 64.)

The Board issued its Adjudication on April 16, 2021, denying the Application. (Board's Adjudication at 13.) It made the following relevant conclusions of law:

> 4. Applicant's proposed sub-surface infiltration beds are structures as defined by [Section 280-4 of the Ordinance] . . . and land which they encumber cannot be included in the calculation of [common open space].

---

[4] The proposed common open space percentage, rounded to the nearest tenth, totals 15.9%.

3

5. Applicant's proposed [System is a] public facilit[y] and [is] prohibited in the [common open space] calculation[] per [Section] 280-91[(F)] of the Ordinance.

6. [Five of the proposed common open spaces] are not areas suitable for recreation, park site, school grounds, woodland conservation, floodplain or other similar recreation or open-space purpose.

7. The Plan fails to meet the [c]ommon [o]pen [s]pace standards of [Section] 280-91 because . . . Applicant has not designated at least 15% of the [Property] as [c]ommon [o]pen [s]pace.

8. The Board may deny a [DMD] conditional use plan which it believes can be developed under other provisions of the [Ordinance] pursuant to Section 280-90[(B)].

9. Single Family Detached dwellings are permitted in the R-4 District on 7,000 square foot lots.

. . . .

12. [The P]lan does not comply with Section[] 401[(B), (E), (F), (J), and (K)] of the General Requirements of the Stormwater Management Ordinance.

13. [The P]lan cannot meet the recharge requirements of Section 405 of the Stormwater Management Ordinance.

(Board Adjudication, Conclusions of Law (COL) ¶¶ 4-9, 12-13.)

In its Adjudication, the Board justified its denial of the Application for three reasons. First, it reasoned that "[b]y encumbering half of the common open space with [the System]," Applicant did not meet the 15% common open space requirement because common open space cannot include areas set aside for public facilities. (Board's Adjudication at 9; FOF ¶ 43.) Second, it concluded that, because the System amounted to a "structure" as defined by the Ordinance, the ground above the System did not count as common open space because such space cannot include "structure[s]." (Board's Adjudication at 10.) Finally, pointing to "no testimony or

4

plans presented which would indicate compliance with the . . . require[ments of] Section 405 of the Township's Stormwater Management Ordinance[,]" the "[P]roject . . . will be a substantial detriment to the residents of both Radnor and Tredyffrin Townships." (*Id.* at 11.) It concluded that "[a]lthough . . . [A]pplicant may be able to comply with the Stormwater [Management] Ordinance in the future as promised, such promises are insufficient upon which an approval may be granted." (*Id.*)

Applicant appealed to common pleas. Taking no additional evidence, common pleas affirmed the Board's Adjudication. It concluded that Applicant failed to comply with the objective criteria for a conditional use because "the [System's] infiltration beds constitute a structure and a public facility under the [Ordinance] and prevents that portion of ground to be considered as open space." (Common Pleas' Opinion at 5.) Moreover, it noted that "[t]he [Board] concluded that the provisions of the [Ordinance] preclude open space from containing stormwater infiltration bed[] areas because they constitute public facilities and structures. This Court is bound by the Board's findings and may not substitute its judgment for the Board." (*Id.* at 6.)

Applicant filed a timely notice of appeal of common pleas' Order.[5]

---

[5] We have combined Applicant's issues where appropriate. Applicant has raised nine issues on appeal, which we paraphrase as follows: Whether common pleas erred in: (i) determining the System encumbered common open space; (ii) determining that the System encumbered the common open space pursuant to Section 280-91; (iii) concluding the System was a public facility, and other public facilities are permitted beneath common open space; (iv) concluding the System was a "structure" prohibited in common open space; (v) relying on the separate Township Stormwater Ordinance in denying the Application; (vi) finding the Project would exacerbate an existing stormwater problem; (vii) denying the Application where objectors did not meet their burden to show the Project would be more detrimental than a typical project of its kind; (viii) claiming portions of the common open space were not "suitable" under Section 280-91; and (ix) predicating its denial of the Application in part on its belief the Property would be better developed under a different section of the Ordinance. (Applicant's Brief at 5-7.)

5

## II. DISCUSSION

### A. *General Legal Principles*

When the court of common pleas takes no additional evidence, we must limit our review to whether the zoning decisionmaker abused its discretion or committed legal error. *Township of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009). Legal error in the form of misinterpretation of a zoning ordinance raises a question of law, so our standard of review is de novo, and our scope of review is plenary. *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 898 (Pa. 2019).

Moreover, conditional uses and special exceptions are permitted uses for which zoning ordinances set forth specific criteria applicants must satisfy. *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006). *See also* Robert S. Ryan, Pennsylvania Zoning Law and Practice § 5.1.1 (2020) ("The applicant for a[ special exception or conditional use] is following the zoning ordinance. His application is one envisioned by the ordinance and, if standards established by the ordinance are met, the use is one permitted by its express terms."). The only difference between a conditional use and a special exception is that municipalities' governing bodies decide conditional use applications, and zoning hearing boards decide special exception applications. *Thompson*, 896 A.2d at 670. Section 913.2(a) of the Pennsylvania Municipalities Planning Code (MPC) provides that "[w]here the governing body, in the zoning ordinances, has stated conditional uses to be granted or denied by the governing body pursuant to express standards and criteria, the governing body shall hold hearings on and decide requests for such conditional uses in accordance with such standards and criteria." 53 P.S. § 10913.2(a).[6]

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329.

"The existence of a conditional use provision indicates legislative acceptance of the proposition that the use is consistent with the zoning plan and should be denied only where the adverse impact on the public interest exceeds that which might be expected in normal circumstances." *In re Application for Conditional Use Approval of Saunders*, 636 A.2d 1308, 1311 (Pa. Cmwlth. 1994). Indeed, once an applicant has satisfied the objective standards of the ordinance, "the application must be granted unless the objectors present sufficient evidence that the use would present a substantial threat to the community." *Id.* The Court in *Bray v. Zoning Board of Adjustment*, 410 A.2d 909 (Pa. Cmwlth. 1980), summarized the burdens of production and persuasion in this context.[7] Applicants shoulder both the burdens of production and persuasion with respect to specific requirements and objective standards. *Id.* at 913. As far as general detrimental effect, like the health, safety, and welfare of the community, the objectors have both burdens, and an ordinance may only shift the burden of persuasion onto the applicant. *Id.* Finally, without exception, objectors bear both burdens with respect to general policy concerns, like harmony with the spirit of the ordinance. *Id.*[8]

**B.     Structure**

We now address whether the System falls within the Ordinance's definition of "structure" such that its existence beneath the common open space disqualifies those spaces from the common open space calculation. The Ordinance provides that "[a]reas set aside for common open space shall contain no **structure** other than a **structure related to outdoor recreational use**." Ordinance § 280-91(D) (emphasis

---

[7] Although *Bray* was specifically focused on special exceptions, it is equally applicable here, as "the law regarding conditional uses and special exceptions is virtually identical, the burden of proof standards are the same for both." *Thompson*, 896 A.2d at 670.

[8] *Bray* described the burden of production as "evidence presentation duty" and burden of persuasion as "persuasion burden." 410 A.2d at 912.

7

added).  The Ordinance defines "structure" as "[a]nything constructed or erected on the ground or attached to the ground including, but not limited to, buildings, sheds, manufactured homes, and other similar items.  This term includes any man-made object having an ascertainable stationary location on or in land or water whether or not affixed to land." *Id.* § 280-4.

Applicant asserts that the Board erred in reading the Ordinance's definition of structure "in an overly technical manner, in a vacuum without resort to context and other [Ordinance] provisions."  (Applicant's Brief at 33.)  It argues that the second sentence's use of "on or in land" does not include wholly underground facilities, and that the Board erred in essentially reading the first sentence out of the definition.  Moreover, it urges the Court to look to the common open space uses provided in the Ordinance to conclude that because the System does not interfere with use or enjoyment of the above-ground space, it is not a structure.  The Board, however, asserts the plain language of the Ordinance compels the conclusion that the underground stormwater facilities are indeed structures, relying on *Tri-County Landfill, Inc. v. Pine Township Zoning Hearing Board*, 83 A.3d 488 (Pa. Cmwlth. 2014).  In its view, the plain language of the Ordinance is unambiguous, and because the System is a man-made structure on or in land, and the common open space will contain that structure, the common open space is disqualified.  The Board points out that the Ordinance's definition of structure "expands upon the definition of a structure found in the MPC." (Board's Br. at 21.) *See* Section 107 of the MPC, 53 P.S. § 10107 (defining structure as "any man-made object having an ascertainable stationary location on or in land or water, whether or not affixed to the land").

In interpreting a zoning ordinance, we adhere to statutory construction principles.  *Borough of Fleetwood v. Zoning Hearing Bd. of Borough of Fleetwood*,

8

649 A.2d 651, 656 (Pa. 1994).  Accordingly, "when the words of a[n ordinance] are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."  Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b).  Moreover, only when an ordinance's text is susceptible to two reasonable interpretations can we say that it is ambiguous.  *Warrantech Consumer Prod. Servs., Inc. v. Reliance Ins. Co. in Liquidation*, 96 A.3d 346, 354-55 (Pa. 2014).  Finally, Section 603.1 of the MPC requires us to interpret ordinance language, "where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction."  53 P.S. § 10603.1.[9]

The definition of structure is unambiguous.  It begins by including "[a]nything constructed or erected on the ground or attached to the ground including, but not limited to, buildings, sheds, manufactured homes, and other similar items."  Ordinance § 280-4.  While that sentence might not seem to encompass the System, as the System is not "constructed or erected on the ground[,]" and the System is not similar to the enumerated examples, all of which are above ground, we are cognizant that the definition has a second sentence.  *Id.*  The second sentence makes clear that the definition is broader, "**includ[ing] any** man-made object having an **ascertainable stationary location** on or **in land** or water whether or not affixed to land."  *Id.* (emphasis added).  We read the second sentence to include a broader catchall definition, and the first sentence as enumerating more specific examples for clarity.  We are satisfied that this reading of the definition of structure adheres to the

---

[9] Section 603.1 was added by Section 48 of the Act of December 21, 1988, P.L. 1329.  The MPC's codification followed a long tradition of courts' application of this general principle.  *See generally Appeal of Lord*, 81 A.2d 533 (Pa. 1951), and Robert S. Ryan, Pennsylvania Zoning Law and Practice §§ 4.2.4, 4.2.5 (2019).

principle that we must give effect to **both** sentences of the definition. *See* 1 Pa.C.S. § 1921(a) ("Every [ordinance] shall be construed, if possible, **to give effect to all its provisions**."). We conclude the System is a structure. The record shows that it is a man-made object. (FOF ¶¶ 38-42.) Further, it has an ascertainable stationary location. (*Id.* ¶ 42.) Finally, there is no doubt that it will exist **in** land. (*Id.* ¶¶ 38-39.) It is of no moment that the System is not the type of structure contemplated by the first sentence because that sentence is meant to convey specific examples, while the second sentence is meant to broadly convey the drafters' intent that the term includes items that fall within its broad scope.

Of course, the common open space areas above the System may only be excluded from the calculation of common open space if we can say that those areas "contain" a "structure other than a structure related to outdoor recreational use." Ordinance § 280-91(D). First, Applicant does not argue that the structure is related to outdoor recreational use, and as a matter of common usage, we would not conclude that an underground stormwater management system is related to such use. Next, given that the definition of structure encompasses items that are **in** land, and the Ordinance's prohibition on common open space areas **containing** a structure, we conclude that the Plan proposes common open space which contains prohibited structures. Indeed, as a matter of common usage, we find it perfectly natural to refer to the Plan as proposing common open space areas that **contain** the System. Put simply, the System is a structure in land contained within common open space areas, and as such, those areas containing the System must be excluded from the common open space calculation.[10]

---

[10] We are not persuaded by Applicant's argument that surrounding provisions in the Ordinance suggest any contrary result. Applicant points to the fact that in a different provision of **(Footnote continued on next page…)**

## III. CONCLUSION

The Plan proposes a stormwater management system under much of the proposed common open space, which means the common open space will contain a prohibited structure. Accordingly, the Plan does not designate sufficient common open space to comply with the conditional use requirements at issue, and the Board did not err in denying the Application on that basis.[11]

_____

**RENÉE COHN JUBELIRER,** President Judge

Judge Wallace concurs in the result only.

_____

the Ordinance, Section 255-43(A)(4), in the subdivision of land chapter, the Ordinance expressly permits underground utilities. Ordinance § 255-43(A)(4). Of course, that Ordinance provision does not control here, being in a separate chapter. Further, it provides, "[r]ecreational areas shall not be traversed by streets or **utility easements** unless said utilities are placed underground . . . ." *Id.* This reveals that the Ordinance drafters knew how to be more specific but chose in Section 280-91(D) to employ broader language. Further, Applicant appears to presume that the System is a "utility easement," but does not analyze the language or explain why. (Applicant's Br. at 26.)

[11] Because this issue is dispositive, we do not reach Applicant's remaining issues.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Trustees of the Dorrance Hamilton : 
3/15/1996 Revocable Agreement of : 
Trust, : 
                        Appellant : 
                  : 
            v. :   No.  1279 C.D. 2022
                  : 
Radnor Township Board : 
of Commissioners : 

## O R D E R

    **NOW**, June 14, 2024, the Order of the Court of Common Pleas of Delaware County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge